707 P.2d 289

**STATE of Arizona, Appellee,**

v.

**Bernard SMITH, Appellant.**

No. 6220.

Supreme Court of Arizona,
En Banc.

Sept. 10, 1985.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Linda Akers and Robert Golden, Asst. Attys. Gen., Phoenix, for appellee.

James Kemper, Deputy Public Defender, Phoenix, and John Hart, Yuma, for appellant.

FELDMAN, Justice.

Bernard Smith (defendant) was convicted of first degree murder and armed robbery on January 19, 1984. A.R.S. §§ 13–1105 and 13–1904. The trial judge sentenced defendant to death for the murder and to life imprisonment for the robbery. In imposing the death sentence, the trial judge found no mitigating factors and five aggravating factors, including three prior felony convictions for offenses committed while on parole. A.R.S. § 13–703. Defendant appeals from both convictions. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3); A.R.S. § 13–4031; and Rule 31.19, Ariz.R.Crim.P., 17 A.R.S.

### FACTS

Shortly before midnight on August 21, 1983, defendant stopped at the Low Cost Market in Yuma to purchase a pack of cigarettes. After he had paid for the cigarettes, he demanded that the clerk, Charles Pray, give him all the money in the cash register. Pray did not comply immediately and called for the store manager, John Wall. Defendant then shot Pray, removed the money from the register and left the store. Pray later died from the gunshot wound.

Ellen Foster had just made her purchases at the Low Cost Market and had re-

turned to the car where her sister, Margaret Westcott, was waiting when they heard the gunshot and saw defendant quickly leaving the store. They watched him as he walked to his car and followed him. He pointed a gun at them, told them to go, and got into his car and drove away. They reported his license number to the police, who stopped defendant, arrested him and transported him immediately to the parking lot of the Low Cost Market. There, the police conducted a show-up at which defendant was presented for identification to four people. Floyd Wooldridge, a customer in the store at the time of the shooting and robbery, made a positive identification. Neither John Wall, Margaret Westcott, nor Susan Massey, who had also been in the store at the time of the shooting and robbery, could identify defendant as the man who had shot Charles Pray.

Ellen Foster did not return to the Low Cost Market for the show-up of defendant but was taken to the police station for an identification procedure. On the way to the station, Officer Skaggs of the City of Yuma Police Department informed Foster that they had "caught the man." Skaggs also told Foster that it had not taken long for the police to apprehend the defendant, that they had been waiting for him at his house, and that they had found the gun in his car. At the station, Foster was presented with three successive show-ups of defendant. After the third show-up, she positively identified him.

At trial, the defense was mistaken identification. On appeal, defendant raises the following issues:

1. Whether the prosecutor's questioning of defendant regarding a prior conviction which the prosecutor did not prove constituted prosecutorial misconduct.

2. Whether the trial judge's denial of defendant's motion to suppress Ellen Foster's in-court identification violated defendant's federal due process right.

3. Whether defendant was improperly given an enhanced sentence under A.R.S. § 13–604.01(A).

4. Whether the use by the prosecutor of evidence of defendant's prior bad acts both in the case-in-chief and in impeaching defendant violated defendant's federal constitutional right to a fair trial.

5. Whether the trial judge's failure to find the "pecuniary gain" aggravating factor beyond a reasonable doubt was improper.

6. Whether certain elements of Arizona's death sentencing procedure violate the eighth and fourteenth amendments to the federal Constitution.

## PROSECUTORIAL MISCONDUCT

During cross-examination of defendant, the prosecutor asked him about a prior conviction for possession of PCP (a controlled substance). The defendant denied the conviction, explaining that the matter that the prosecutor referred to was actually a revocation of probation. The prosecutor introduced no evidence to rebut defendant's testimony or to establish the conviction. Defendant asserts that this failure of proof is prosecutorial misconduct requiring reversal.

The general rule is that a prosecutor cannot impeach a defendant with evidence of prior conduct without offering evidence to prove the bad conduct at trial. *State v. Bailey*, 132 Ariz. 472, 477–78, 647 P.2d 170, 175–76 (1982); M. UDALL & J. LIVERMORE, ARIZONA LAW OF EVIDENCE § 47 at 93 (2nd ed.1982). The basis for this rule is that "[by] asking questions that have no basis in fact, the questioner can leave in the minds of the jurors all kinds of damaging and prejudicial but false or inadmissible facts, facts which can't be adequately rebutted...." *State v. Holsinger*, 124 Ariz. 18, 21, 601 P.2d 1054, 1057 (1979). We first announced this principle in *State v. Singleton*, 66 Ariz. 49, 182 P.2d 920 (1947). There, the prosecutor attempted to impeach the defendant with questions implying that he had quarreled with and threatened several persons in other incidents unrelated to the crimes for which the defendant was on trial. We reversed the conviction because, after the

defendant denied the allegations, the prosecution failed to offer evidence in rebuttal. More recently, we reversed a conviction where the prosecutor implied by his questioning of a state's witness that the defendant had a "long criminal record," and then, after the defendant's denial, introduced no evidence to support the assertion. *State v. Holsinger*, 124 Ariz. at 20–21, 601 P.2d at 1056–57.

■ We believe that the facts in the case at bench distinguish it from such cases as *Singleton* and *Holsinger*. Here, the prosecutor arguably had a factual basis for questioning defendant about his "conviction" for possession of PCP.[1] As defendant explained on cross-examination, he had been convicted of one possession of PCP, had been placed on probation, and then had his probation revoked. It was this revocation of probation to which the prosecutor referred as a "conviction." Once defendant had offered this explanation, the prosecutor did not pursue that line of questioning. Thus, unlike the defendants in *Singleton* and *Holsinger*, defendant here was given an opportunity to explain his denial of the prior conviction. The jury had the benefit of this explanation and could infer that the prosecutor had mistaken the probation revocation for a conviction.

■ Also, the matter alluded to was hardly prejudicial under the facts of this case. In addition to his admission to one conviction for PCP possession, defendant had admitted three prior convictions for armed robbery. Under these circumstances we believe that any error caused by the prosecutor's questioning was harmless and does not require reversal. *Cf. State v. Marvin*, 124 Ariz. 555, 558, 606 P.2d 406, 409 (1980) (prosecutor's use of the term "rape" in questioning the defendant, though improper, did not require reversal where the defendant had explained that he did "forcibly have sex" with his ex-wife and where other evidence of the defendant's guilt was abundant).

### PRETRIAL IDENTIFICATION

Defendant claims that the trial court should have suppressed Ellen Foster's in-court identification because Officer Skaggs' comments to Foster on the way to the police station and the identification procedure at the station were unduly suggestive and thus fundamentally unfair. Defendant contends that the trial court's denial of his pretrial motion to suppress violated his constitutional right to due process of law.

■ Under the fourteenth amendment to the United States Constitution, a criminal defendant is entitled to have any pretrial identification procedure conducted in a manner that is fundamentally fair so as to secure his right to a fair trial. *Stovall v. Denno*, 388 U.S. 293, 297–98, 87 S.Ct. 1967, 1970–71, 18 L.Ed.2d 1199 (1967); *United States v. Wade*, 388 U.S. 218, 235, 87 S.Ct. 1926, 1936, 18 L.Ed.2d 1149 (1967). Unduly suggestive pretrial procedures may unfairly cause a witness to misidentify the defendant, and then to repeat the misidentification at trial. The "very substantial likelihood of an irreparable misidentification" at trial deriving from such an unfair pretrial identification procedure is a primary danger to be avoided. *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). Thus, if a defendant challenges a proposed in-court identification on the grounds that it is tainted by a pretrial identification procedure, he must be accorded a hearing to determine the preliminary question of whether the pretrial identification procedure was in fact unduly suggestive. *State v. Dessureault*, 104 Ariz. 380, 384, 453 P.2d 951, 955 (1960), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970). At the hearing the prosecution must establish with clear and convincing evidence that the pretrial identification procedure was not unduly suggestive and therefore would not taint the in-court identification. *Id.* If the court finds

---

1. We have examined the abstracts of judgment from the state of California, where defendant was convicted, and find them not altogether clear as to the conviction and probation revocation. These abstracts, though part of the record, were not admitted into evidence.

that the pretrial identification procedure was unduly suggestive, it must next address the question whether the identification is nevertheless reliable. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *State v. Tresize*, 127 Ariz. 571, 574, 623 P.2d 1, 4 (1980). The reliability question is to be answered by examining the factors set forth in *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). Whether the in-court identification of the defendant is thus admissible despite suggestive prior identification procedures is a preliminary question for the trial court. *State v. Dessureault, supra.* We will not disturb the trial court's ruling on admissibility unless it is clearly against the weight of the evidence and prejudice results. *Selby v. Savard*, 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982); *State v. Chapple*, 135 Ariz. 281, 297 n. 18, 660 P.2d 1208, 1224 n. 18 (1983).

■ The state in this case quite properly conceded in its brief and at oral argument that the pretrial identification by Foster was unduly suggestive. The concession is based on the combination of Officer Skaggs' pre-identification assurances to Foster of the defendant's guilt and the triple show-up conducted at the police station. Defendant argues that the taint of these pretrial circumstances is so great that it precludes a finding that the identification was reliable despite its suggestiveness. We thus turn to an examination of the reliability of the identification.

In *Neil v. Biggers*, the Supreme Court enumerated five factors to be considered in evaluating the likelihood of an in-court misidentification based on a suggestive pretrial identification. Those factors are:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* 409 U.S. at 199, 93 S.Ct. at 382.

At the pretrial suppression hearing, Foster testified as to her observations of de-

fendant at the Low Cost Market. She stated that there was "light enough to see" in the parking lot as defendant left the store and that there was no other activity to divert her attention from him. Foster said she was able to fix her full attention on defendant and observed his profile continuously from the time when he stepped out of the store until he arrived at his car. She testified further that she saw defendant full face when he then turned toward her and her sister, raised his gun, and threatened them. We believe that this testimony reveals a sufficient opportunity to view defendant and a sufficient degree of attention by Foster to defendant's actions at the time of the crime to support a finding in the state's favor of the first two *Neil v. Biggers* factors.

On the way to the police station, Foster described the man she had seen to Officer Skaggs. She described him as young, possibly mid-twenties, bushy-haired, and slim, wearing a blue shirt and jeans. At the suppression hearing, Foster testified that she made this description without the assistance of any information from Officer Skaggs. Officer Rodgers of the City of Yuma Police Department, who assisted in the arrest of defendant and the investigation that followed, testified that Foster's description, excluding the clothing defendant was wearing, was accurate. At the time defendant was arrested, he was wearing a red shirt; however, there was further testimony at the hearing that a blue windbreaker type of jacket was found on the floor on the passenger side of the vehicle in which defendant was apprehended. Thus, one could infer that between the time Foster observed defendant and the time of his arrest, he had removed his jacket and dropped it on the floor of his car. We conclude that Foster's description was sufficiently accurate to allow the court to find the third *Neil v. Biggers* requirement for the state.

At the show-up at the police station, Foster could not immediately identify defendant as the man she had seen at the Low

Cost Market. She testified at the suppression hearing that she was unable to make a positive identification after first seeing defendant because he slouched and held his head down as he walked by the window through which she was looking at him. On his second pass by the window, Foster still could not be certain because he walked by "too fast to catch his face." On the third show-up, Foster was presented with a full face view of defendant because the police officers had him turn around, face Foster, and stand in that position for a moment. Foster was then able to make a positive identification and consistently identified him thereafter. We do not believe that Foster's caution in identifying defendant casts doubt on the reliability of her later identification. We encourage such caution. We therefore find that the certainty of Foster's identification, once made, also supports a finding of the fourth *Neil v. Biggers* factor in the state's favor.

The final *Neil v. Biggers* factor to be considered is the elapsed time between the crime and the confrontation. Here defendant was presented to Foster for identification purposes within thirty minutes of the shooting. Defendant concedes that this period of time is so short as to weigh in the state's favor.

Considering the totality of the circumstances surrounding the show-up at the police station, we hold the evidence supports the trial court's determination that Foster's trial identification was sufficiently reliable so that it did not violate defendant's right to due process. The trial judge thus did not err in denying defendant's motion to suppress.

ENHANCED SENTENCE

On August 25, 1983, defendant was indicted for armed robbery in violation of A.R.S. §§ 13–1902, 13–1904(A)(2), and 13–604. The indictment specifically charged defendant with "using or threatening to use a deadly weapon or dangerous instrument," one definition of armed robbery contained in A.R.S. § 13–1904(A). At the close of the evidence, the jury received instructions on the elements of armed robbery and the definition of "deadly weapon." The jury returned a verdict finding defendant guilty of armed robbery. Following entry of judgment on this verdict, the trial judge sentenced defendant to life imprisonment under A.R.S. § 13–604.01(A). Defendant contends that the court erred in imposing the life sentence.

A.R.S. § 13–604.01(A) provides that

> a person convicted of any felony offense involving the use or exhibition of a deadly weapon or dangerous instrument or involving the intentional or knowing infliction of serious physical injury upon another if committed while the person is on ... parole, ... shall be sentenced to life imprisonment....

Under this statute, two elements must be present for enhancement of punishment: commission of the subsequent offense while defendant is on parole for a prior offense, and the dangerous nature of the subsequent offense. Defendant admitted at trial that he was on parole at the time he committed the instant offense. It is the existence of the element of dangerousness that he challenges. Defendant contends that since the jury did not make a specific finding of dangerousness or of "intentional or knowing infliction of serious physical injury," the enhanced sentence was improperly imposed.

We have previously resolved this issue against defendant's contention, holding in *State v. Tresize*, 127 Ariz. 571, 623 P.2d 1 (1981), that a specific factual finding of dangerousness is not necessary in all cases. In *Tresize*, as in the instant case, the defendant was indicted for armed robbery, and the indictment alleged dangerousness. The jury received instructions on the elements of armed robbery and the definition of "deadly weapon," as in this case, and returned a verdict finding the defendant guilty of armed robbery. Since the offense of armed robbery can be committed only when one "is armed with a deadly weapon" or "uses or threatens to use a deadly weapon or dangerous instru-

ment," A.R.S. § 13–1904(A), we concluded that the jury must necessarily have found that the defendant committed a dangerous offense involving the use of a deadly weapon. *Id.* 127 Ariz. at 574, 623 P.2d at 4. *See also State v. Caldera,* 141 Ariz. 634, 637–38, 688 P.2d 642, 645–46 (1984). Thus, no specific finding of dangerousness is required where an element of the offense charged requires proof of the dangerous nature of the felony. *See State v. Parker,* 128 Ariz. 97, 624 P.2d 294 (1981) (specific finding of dangerousness required where offense charged was negligent homicide). *Compare State v. Grilz,* 136 Ariz. 450, 666 P.2d 1059 (1983); *with State v. Barrett,* 132 Ariz. 88, 644 P.2d 242 (1982) (whether specific finding of dangerousness is required depends upon whether the second degree murder instruction required a finding of dangerousness).

In the case at bench, defendant was charged with armed robbery, a requisite element of which is proof of dangerousness. A.R.S. § 13–1904 A. Because the jury's verdict thus necessarily included a finding of dangerousness, no error occurred in the court's sentencing of defendant to life imprisonment under A.R.S. § 13–604.01(A). We take this opportunity, however, to reiterate our advice in *Barrett, supra,* that the prosecution should ask for a separate form of verdict for dangerousness in addition to guilt of the offense charged when it seeks enhancement under § 13–604.01.

## PRIOR CONVICTIONS

By the time he took the stand in this case, defendant had been convicted of three prior armed robberies in Yuma, all occurring in the summer of 1983.[2] Prior to trial, the prosecution moved for permission to use these prior bad acts as substantive evidence in its case in chief. The trial court granted this motion over defendant's objection. During its case in chief, the state called Richard Allen Jones, who testi-

fied as to a robbery at a Circle K on August 14, 1983 and then identified defendant as the man who had robbed the store. Later, in cross examining defendant, the prosecutor impeached him with this and two other armed robbery convictions. After defendant had testified, the prosecution called as a rebuttal witness Robert Irwin, who identified defendant as the person who had robbed the Circle K where he was working on the night of July 23, 1983. Defendant contends that the use of this evidence both in the state's case in chief and in impeachment denied defendant his right to a fair trial and thus violated his constitutional right to due process.

Evidence of a defendant's prior conduct or other crimes is generally not admissible to prove his bad character or his actions in conformance with that character. *See generally* M. UDALL & J. LIVERMORE, *supra,* § 84. Under Rule 404(b) of the Arizona Rules of Evidence, however, such evidence is admissible to prove such things as common scheme, a plan, or defendant's identity. Defendant in this case asserted the defense of mistaken identity. Evidence of the three Circle K robberies was therefore admissible to verify the witnesses' pretrial and in-court identifications and thus prove that defendant was the one who had committed the charged robbery and murder at the Low Cost Market, a convenience store similar to the Circle K markets. *State v. Brown,* 125 Ariz. 160, 161, 608 P.2d 299, 300 (1980).

In addition to admissibility under Rule 404(b), evidence of prior felony convictions is generally properly admitted for impeachment purposes. Rule 609, Ariz.R. Evid., 17A A.R.S. Once defendant took the stand, therefore, he was vulnerable to impeachment with evidence of his prior armed robbery convictions. Defendant does not contest the trial court's ruling as to the admissibility of the evidence for this purpose or for purposes of proving his identity. While conceding that either use is per-

---

**2.** We recently reviewed defendant's conviction of those three counts of armed robbery and affirmed the convictions and the court's imposi-

tion of three concurrent life sentences in a memorandum decision filed June 13, 1985. *State v. Smith,* No. 6177–PR, June, 1985.

missible independently of the other, defendant argues that their combined use prevented him from receiving a fair trial.

 It is for the trial court to determine whether evidence properly admissible should, nevertheless, be excluded as unduly prejudicial. *State v. Jeffers*, 135 Ariz. 404, 661 P.2d 1105, *cert. denied*, 461 U.S. 971, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983). That determination is to be made by balancing the probative value of the evidence against the prejudicial effect the evidence would have on those hearing it. Rule 403, Ariz.R. Evid., 17A A.R.S. In this case, the trial judge found that the probative value of the other crime evidence outweighed its potential prejudicial effect. Because defendant had raised the defense of mistaken identification, the fact that he had committed similar robberies was relevant to establishing his identity in the instant offense. It was thus within the trial court's discretion to admit the evidence. We find no abuse of that discretion in his allowing its use for both substantive proof of identity and impeachment purposes. The chief danger to be avoided in limiting the admissibility of evidence of other crimes is the potential prejudice it will cause against the one accused of committing a crime. *See* McCORMICK'S HANDBOOK OF THE LAW OF EVIDENCE §§ 188, 190 (3rd ed. 1984). Once that evidence is before the jury for one purpose, however, we cannot see what substantial further prejudice will result from its use for the additional purpose of attacking the credibility of defendant after he had taken the stand to testify in his own behalf. We thus find no error in the trial court's holding the evidence admissible for both purposes.

## DEATH PENALTY ISSUES

 Defendant raises several constitutional arguments regarding various aspects of Arizona's death penalty procedure. First, defendant claims that the procedure violates the eighth and fourteenth amendments to the United States Constitution because it fails to provide an adequate standard for weighing aggravating and mitigating circumstances and thus is impermissibly vague. We considered this argument at length in *State v. Gretzler*, 135 Ariz. 42, 53–56, 659 P.2d 1, 12–13 (1983), *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). We rejected the argument in *Gretzler* and continue to do so.

 Defendant also claims a violation of the eighth and fourteenth amendments by the requirement of A.R.S. § 13–703 that the trial judge impose the death penalty where he finds one or more aggravating circumstances and no mitigating circumstances. This, defendant contends, constitutes an improper mandatory sentencing procedure. Whatever merit there may be in the argument that no particular statutory formulation can compel a trial judge to impose the death penalty, we do not consider it at this time. Under the circumstances of this case—the trial court's finding of five aggravating and no mitigating circumstances—that issue is not relevant. We have previously decided the issue contrary to defendant's contention and do not depart from it today. *See State v. Jordan*, 137 Ariz. 504, 508, 672 P.2d 169, 173 (1983) (*Jordan III*); *State v. Gretzler, supra*.

 Defendant contends that the "pecuniary gain" aggravating factor, A.R.S. § 13–703(F)(5), and the "heinous, cruel or depraved" aggravating factor, A.R.S. § 13–703(F)(6), are vague and result in the arbitrary imposition of the death penalty in violation of the eighth and fourteenth amendments. We have previously found both provisions constitutional. *State v. Nash*, 143 Ariz. 392, 400, 694 P.2d 222, 230, *cert. denied*, —— U.S. ——, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985) (pecuniary gain); *State v. Gretzler*, 135 Ariz. at 50, 659 P.2d at 9 (heinous, cruel or depraved); *State v. Jeffers*, 135 Ariz. at 430, 661 P.2d at 1131 (heinous, cruel or depraved). We again hold that A.R.S. § 13–703(F)(5) and (6) are not unconstitutionally vague.

 Defendant also raises a non-constitutional argument regarding the "pecuniary gain" factor, claiming error in the trial

judge's failure to articulate that this factor was established beyond a reasonable doubt. It is true that the state must prove the existence of aggravating circumstances beyond a reasonable doubt, *State v. Jordan,* 126 Ariz. 283, 286, 614 P.2d 825, 828, *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980) (*Jordan II*). However, it does not follow that the trial judge must make formalistic specific findings as to each aggravating circumstance at the sentencing stage. We considered this argument in *Jordan III,* where the trial judge found as an aggravating circumstance that the defendant had been previously convicted of robbery and aggravated robbery. The defendant did not attack the validity of those convictions, and we therefore held that they were established beyond a reasonable doubt and that the state had met its burden of proof at sentencing. We find the *Jordan III* reasoning persuasive and apply it to the "pecuniary gain" aggravating factor found in the instant case. Defendant was convicted of armed robbery of the cashier of a convenience store. Under the facts of *this* case (but certainly not of all robberies) the commission of the killing necessarily carried with it the expectation of pecuniary gain. *See State v. Nash,* 143 Ariz. at 401, 694 P.2d at 231. Thus, implicit in the finding by the jury that defendant committed armed robbery was the finding beyond a reasonable doubt that he had committed an offense for pecuniary gain. The state therefore had met its burden of proof, and no separate finding by the trial judge was necessary.

## INDEPENDENT REVIEW

We have a duty in all death penalty cases to conduct an independent review to determine whether the death penalty was properly imposed. *State v. Richmond,* 114 Ariz. 186, 560 P.2d 41 (1976), *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977). We make this assessment by examining the record to determine the presence or absence of aggravating and mitigating circumstances. In this case, the trial judge found no mitigating and five aggravating factors: (1) three prior felony convictions,

A.R.S. § 13–703(F)(1); (2) use or threat of violence on another person, *id.* (F)(2); (3) creation of a grave risk of death to a person other than the victim, *id.* (F)(3); (4) expectation of pecuniary gain, *id.* (F)(5); and (5) commission of the offense in a heinous, cruel or depraved manner, *id.* (F)(6).

### 1. Mitigating Factors

At the sentencing hearing, defendant's counsel argued as a mitigating factor defendant's relatively young age. Defendant was at that time thirty years of age. We have refused to find age as a mitigating factor in numerous cases where the defendants were much younger than defendant here. *See, e.g., State v. Clabourne,* 142 Ariz. 335, 348, 690 P.2d 54, 67 (1984) (age twenty); *State v. Gillies,* 135 Ariz. 500, 513, 662 P.2d 1007 1020 (1983) (Gillies I) (age twenty); *but see State v. Valencia,* 132 Ariz. 248, 250, 645 P.2d 239, 241 (1982) (age sixteen sufficiently young to establish mitigating factor). We agree with the trial court's finding that defendant's age was not a mitigating factor. Our review of the record reveals no other mitigating circumstances. We thus concur with the trial court's finding of no mitigation.

### 2. Prior Felony Convictions

The trial court found that defendant had been convicted of three separate offenses of armed robbery committed while he was on parole for an earlier offense. Under Arizona law, defendant had therefore received mandatory life sentences for each of these armed robbery convictions. A.R.S. § 13–604.01. The trial judge found these prior convictions to be an aggravating circumstance under A.R.S. § 13–703(F)(1), which provides for imposition of the death penalty where "[t]he defendant has been convicted of another offense in the United States for which under Arizona law a sentence of life imprisonment or death was imposable."

Defendant argues that this finding is erroneous because at the time of the sentencing hearing those convictions were on appeal. We have considered this argument before and rejected it. *See Jordan II,* 126 Ariz. at 287, 614 P.2d at 829–30. We acknowledge that an invalid prior conviction cannot be used as an aggravating circumstance to support the imposition of the death penalty, *see State v. Steelman,* 126 Ariz. 19, 23–24, 612 P.2d 475, 479–80, *cert. denied,* 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980); however, the prior convictions in this case have been affirmed. See n. 2, *ante.* Thus, we continue to recognize that "a prior conviction is a verity until set aside." *Jordan II,* 126 Ariz. at 287, 614 P.2d at 829–30. We conclude that the trial court properly considered defendant's prior armed robbery convictions as an aggravating circumstance.

### 3. Violent Felony Conviction

■ The trial judge also found as an aggravating circumstance that the "defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person." A.R.S. § 13–703(F)(2). As noted above, defendant does not challenge the validity of his three prior armed robbery convictions. The only question, therefore, is whether an armed robbery is a felony "involving the use or threat of violence." We have stated previously that this court "may take judicial notice that certain crimes are, by definition, violent felonies against others." *State v. Nash,* 143 Ariz. at 402, 694 P.2d at 234. As far as A.R.S. § 13–703(F)(2) is concerned, in Arizona the crime of armed robbery is a violent felony committed against another person. *See id.* The trial judge was thus correct in finding this aggravating circumstance.

### 4. Grave Risk to Others

■ The third aggravating circumstance found by the trial judge was that "[i]n the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense." A.R.S. § 13–703(F)(3). The trial judge based his finding of this aggravating circumstance on defendant's taking a deadly weapon into a public place where other persons were present and could have been struck by a bullet or could have been shot by defendant if they had interfered with the commission of the robbery. We recently reviewed our cases where we have upheld the finding of this aggravating circumstance and concluded that, in each case, *"the murderous act itself* put other people in a zone of danger." *State v. McCall,* 139 Ariz. 147, 160, 677 P.2d 920, 933 (1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984) (emphasis added). We do not find this case analogous to the cases cited in *McCall.* In each of those cases, as distinguished from the instant case, the defendant committed an act—firing random shots in a crowded bar or gymnasium or setting a house on fire knowing of occupants trapped inside—which only fortuitously failed to cause another person's death. Defendant in this case, however, shot only at the victim Charles Pray, who was the only person standing between defendant and what he wanted—the money in the cash register. The shooting thus was not random and indiscriminate, but purposeful. Although other persons were in the store at the time of the shooting, defendant's *murderous act itself* did not place them within the zone of danger.

■ We also find that defendant's pointing his gun at Margaret Westcott and Ellen Foster in the parking lot and telling them to go did not pose a grave risk of death to either of them. This case is more analogous to *State v. Jeffers, supra,* where we found no aggravating circumstance in the defendant's pointing a gun at a third party merely to quiet her, than to our more recent decision in *State v. Nash, supra,* where we found aggravation in the defendant's shooting the victim once, then pointing the gun at a third party within five feet of him, and finally firing two more shots at the victim while the third party avoided

injury by taking cover. Since we find that defendant's "murderous act" did not create a grave risk of death for persons other than the victim, we disapprove the trial court's finding of this aggravating circumstance and conclude that A.R.S. § 13–703(F)(3) is inapplicable to this case.

### 5. Pecuniary Gain

■ The trial court also found as an aggravating circumstance that defendant committed the murder "in expectation of the receipt ... of anything of pecuniary value." A.R.S. § 13–703(F)(5). To form the basis for this aggravating circumstance, the hope of pecuniary gain must be the impetus for the murder, not merely its result. *State v. Harding*, 137 Ariz. 278, 296–97, 670 P.2d 383, 394–95 (1983), (J. Gordon, specially concurring), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984). In the instant case, the trial judge found that defendant committed the murder solely for the purpose of gaining access to the cash register, which was under the victim's control. Defendant first demanded that the clerk give him all the money in the register, and then shot him when he called for the store manager instead of handing over the cash. Clearly, the impetus for this murder was the expectation of pecuniary gain from the contents of the cash register. We thus approve the trial court's finding of this aggravating circumstance.

### 6. Heinous, Cruel or Depraved Manner

■ The final aggravating factor found by the trial court was that the "defendant committed the offense in an especially heinous, cruel or depraved manner." A.R.S. § 13–703(F)(6). We have stated that, to meet this description, the murder must have been committed in such a way as to "set [defendant's] acts apart from the norm of first degree murder." *State v. Brookover*, 124 Ariz. 38, 41, 601 P.2d 1322, 1325 (1979). All first degree murders are to some extent heinous, cruel or depraved; therefore, to warrant the imposition of the death penalty, a murder must be more hei-

nous, cruel or depraved than usual. *See State v. Ortiz*, 131 Ariz. 195, 206, 639 P.2d 1020, 1031 (1981), *cert. denied*, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982); *State v. Lujan*, 124 Ariz. 365, 372, 604 P.2d 629, 636 (1979). Thus, in *Brookover* we found the murder not to have been committed in a heinous, cruel or depraved manner where the defendant shot the victim twice in the back, once while standing and again after he had fallen to the floor. We observed that "[w]hile certainly cowardly, [the shooting] was not done in a particularly cruel or depraved manner. This was not a 'conscienceless or pitiless crime which is unnecessarily torturous to the victim.'" *Id.*, quoting *State v. Dixon*, 283 So.2d 1, 9 (Fla.1973) *cert. denied*, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974) (interpreting the same terms in the Florida death sentencing statute). Although this manner of killing may be seen as heinous, cruel or depraved, it was not *especially* so, as required by our statute. *See* Note, *The Aggravating Circumstances of Arizona's Death Penalty Statute: A Review*, 26 ARIZ.L.REV. 660, 673, 675 (1984). If we are to uphold this aggravating circumstance, we must find that defendant murdered Charles Pray in a manner that not only was heinous, cruel or depraved, but that was *especially* so. *State v. Brookover, supra.*

■ "Heinous" and "depraved" are characteristics reflecting the mental state and attitude of the perpetrator of the crime. *State v. Gretzler*, 135 Ariz. at 51, 659 P.2d at 10. In *Gretzler*, we listed several factors which may lead to a finding of heinousness or depravity: (1) the apparent relishing of the murder by the killer; (2) the infliction of gratuitous violence on the victim beyond the murderous act itself; (3) the needless mutilation of the victim; (4) the senselessness of the crime; and (5) the helplessness of the victim. *Id.* at 52, 659 P.2d at 11. Absent additional aggravation, however, neither of the last two factors alone will ordinarily be determinative on the question of heinousness or depravity.

*Id.* at 57, 659 P.2d at 11; *see* Note, *supra,* at 678.

In the instant case, defendant shot the victim in the head immediately after demanding that the victim hand over the money in the cash register. Defendant then proceeded to empty the cash drawer and leave the store. He inflicted no further violence on the victim and did not mutilate him; neither is there anything in defendant's conduct following the murder that would indicate that defendant "relished" the act of murder. That defendant's actions may have been cold and deliberate demonstrates not heinousness or depravity but the element of intent, which establishes the mens rea necessary for the crime of first degree murder but is of no consequence in the death sentencing determination. Thus, we find that defendant here did not commit murder in an especially heinous or depraved manner.

■ We move, then, to a consideration whether the murder was committed in an especially cruel manner. "Cruel" refers to the pain and mental and physical distress suffered by the victim. *State v. Gretzler,* 135 Ariz. at 51, 659 P.2d at 10. We have defined cruelty specifically as the infliction of pain on the victims of a crime. *Id.* Our concept of pain involves not only physical distress but the mental anguish experienced by a victim of a violent crime. *State v. Clark,* 126 Ariz. 428, 436, 616 P.2d 888, 896, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Thus, we have found cruelty where the defendant burned to death his two daughters, *State v. Knapp,* 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), and where the killers performed successive rapes and beatings of the victim prior to killing her, *State v. Mata,* 125 Ariz. 233, 609 P.2d 48, *cert. denied,* 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980). In addition, we have found cruelty in the "great degree of mental pain" suffered by victims who were held by armed captors, moved about at gunpoint, and finally forced to witness the killing of other family members prior to being killed themselves. *State v. (Ricky) Tison,* 129 Ariz. 526, 543, 633 P.2d 335, 352, *cert. denied,* 454 U.S. 960, 102 S.Ct. 499, 70 L.Ed.2d 376 (1981).

The instant case does not present such extreme circumstances as do the cases just cited. Indeed, the evidence of cruelty present in this case is the pain and mental anguish suffered by the victim during the two-week interval between the shooting and his death. We do not minimize this evidence, but it does not meet the prerequisite that we recognized in *State v. Adamson,* 136 Ariz. 250, 665 P.2d 972, *cert. denied,* 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983). To support a finding of cruelty, the state must show that the defendant either intended or reasonably foresaw that the victim would suffer as a result of the defendant's acts. *Id.* at 266, 665 P.2d at 988. We held that the car bombing in which Adamson's victim died was such a means of killing and that the murder thus was accomplished in an especially cruel manner. In the instant case, defendant shot the victim in the head, an act which seems intended to cause immediate death, not prolonged suffering. Thus, we do not believe that defendant intended or reasonably foresaw that his victim would suffer. *Cf. State v. Harding,* 141 Ariz. 492, 687 P.2d 1247 (1984). Accordingly, we find that the killing was not committed in an especially cruel manner. Since we have also determined that the killing was not especially heinous or depraved, we conclude that the trial court's finding of aggravation under A.R.S. § 13–703(F)(6) was improper.

■ We thus find that the trial court erred in finding two of the aggravating circumstances under A.R.S. § 13–703(F), but was correct in its finding as to the other three and as to the absence of mitigation. That court's imposition of the death penalty was proper. *See State v. Jordan (Jordan II), supra.* Our elimination of some aggravating factors in the absence of mitigating circumstances does not mandate a remand to the trial court for resentencing. *State v. McCall,* 139 Ariz. at 161 n. 4,

677 P.2d at 920 n. 4, *see also State v. Gretzler,* 135 Ariz. at 54, 659 P.2d at 13, *State v. Smith,* 131 Ariz. 29, 35, 638 P.2d 696, 702 (1982), *State v. Blazak,* 114 Ariz. 199, 205–206, 560 P.2d 54, 60–61 (1977).

 In Arizona the death penalty is reserved for those who stand out from the norm of first degree murderers either because of the act committed or because of the defendant's background. *State v. Watson,* 129 Ariz. 60, 63, 628 P.2d 943, 946 (1981). The record of the defendant takes him out of the norm of first degree murderers. The penalty thus fits both the offender as well as the offense. *State v. Gretzler,* 135 Ariz. at 54, 659 P.2d at 13.

### PROPORTIONALITY REVIEW

■ We must also examine the concept of proportionality to determine whether imposition of death violates the eighth amendment. The question is whether the death penalty imposed upon this defendant is excessive or disproportionate to the penalty imposed in similar cases. *See State v. Richmond,* 114 Ariz. 186, 196, 560 P.2d 41, 51 (1976).

We have reviewed our other cases and find that the imposition of death here is not disproportionate. *State v. Blazak, supra; State v. Britson,* 130 Ariz. 380, 636 P.2d 628 (1981), *State v. Schad,* 129 Ariz. 557, 633 P.2d 366 (1981), *cert. denied,* 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982). This defendant had three previous convictions involving dangerous crimes, plus at least one prior drug conviction. He was on parole at the time of the killing. The killing, while not "cruel" as that word is used in the statute, was cold, deliberate and intentionally committed to gain access to the cash drawer. Defendant could have abandoned the robbery attempt, but chose to complete it by killing. The punishment is not disproportionate.

We have searched the record for fundamental error according to the mandate of A.R.S. § 13–4035 and have found none. Accordingly, the judgment of conviction is affirmed and the sentence of death approved.

HOLOHAN, C.J., GORDON, Vice Chief Justice, and HAYS and CAMERON, JJ., concur.