783 P.2d 816

**The STATE of Arizona, Appellee,**

v.

**John Raymond STABLER, Appellant.**

**No. 2 CA–CR 89–0396.**

Court of Appeals of Arizona,
Division 2, Department A.

Nov. 14, 1989.

Robert K. Corbin, Atty. Gen. by R. Wayne Ford, Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Frederick S. Klein, Tucson, for appellant.

## OPINION

HATHAWAY, Judge.

Appellant, John Raymond Stabler, was convicted upon a jury verdict of first-degree murder, armed robbery and theft of property valued over $1,000. As part of a plea agreement wherein the state agreed not to seek the death penalty, appellant pled guilty to attempted first-degree murder, armed robbery, kidnapping and theft of property valued over $1,000. He was sentenced on the pled charges to concurrent terms of imprisonment, the longest of which was 18 years. On the jury convictions, he was sentenced to concurrent terms of imprisonment, the longest of which was life, to be served consecutive to the sentences for the pled charges. Appellant appeals only from the jury verdicts and sentences.

Appellant was hitchhiking and was given a ride by the victim, a jailer with the Pima County Sheriff's Office. The victim took appellant to his home. Along the way, and after they arrived at the victim's home, both men consumed a considerable amount of beer. Appellant testified that while they were sitting on the sofa watching television, the victim grabbed at appellant's crotch. When appellant drew back, the victim took a knife and blocked the door. When appellant attempted to get out the door, the victim grabbed him. They struggled and the victim dropped the knife. Appellant picked it up and stabbed the victim until he fell to the floor. One of the stab wounds was to the victim's neck which severed the right jugular vein. According to the autopsy report, the victim died approximately one-half hour to an hour after being wounded. Appellant took the keys to the victim's pickup truck and money from the victim's pockets. Appellant then drove to Phoenix.

The day after the stabbing, appellant was stopped while driving the pickup truck. The police had received an anonymous call to Crime Stop that a truck with the same license plate was involved in a drug transaction. Appellant was cited for not having a driver's license. He was not arrested. The victim's body was discovered the following day by sheriff's deputies who were investigating why he had failed to report for work. Appellant was arrested in Phoenix later that same day. When questioned by detectives, appellant denied having been in Tucson and denied any involvement in the murder. When he testified at trial, appellant admitted stabbing the victim. His defense was self defense and a rage reaction to the homosexual advance made by the victim.

Appellant raises four issues on appeal: (1) the initial stop by the police officer the day before he was arrested violated his constitutional rights and the fruits of that stop should have been suppressed; (2) misconduct on the part of the prosecutor constituted reversible error; (3) the trial court erred in admitting into evidence a color coroner's photograph of the victim, and (4) statements made by appellant to the police should have been suppressed. We affirm.

## INITIAL STOP

Appellant first argues that the anonymous telephone call concerning the drug transaction was insufficient to justify the

officer stopping the truck; therefore, evidence discovered in the truck or statements made by him should have been suppressed.

In reviewing a trial court's ruling on a motion to suppress, we view the facts in the light most favorable to upholding the ruling and will not overrule the trial court absent a showing of clear and manifest error. *State v. Sheko*, 146 Ariz. 140, 704 P.2d 270 (App.1985). Appellant claims a violation of his Fourth Amendment right to be secure against unreasonable searches and seizures. The issue is whether the initial stop by the police officer was reasonable under the circumstances. The United States Supreme Court has articulated a dual inquiry for evaluating the reasonableness of a temporary investigative stop: Whether the police officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances that justified the interference in the first place. *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).

The standard of justification for an investigative stop is whether the officer had a reasonable suspicion that criminal activity "may be afoot." *United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Lawson*, 144 Ariz. 547, 698 P.2d 1266 (1985). The intrusion cannot be based on unfounded suspicion; there must be some demonstrable basis to determine that the officer's action was not arbitrary or harassing. *United States v. Walling*, 486 F.2d 229 (9th Cir.1973), cert. den. 415 U.S. 923, 94 S.Ct. 1427, 39 L.Ed.2d 479; *State v. Jarzab*, 123 Ariz. 308, 599 P.2d 761 (1979), cert. den. 444 U.S. 1102, 100 S.Ct. 1069, 62 L.Ed.2d 789 (1980). As stated in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the concern is assurance that the expectation of privacy is not violated by "arbitrary invasions solely at the unfettered discretion of [the] officers." 443 U.S. at 51, 99 S.Ct. at 2640.

■ The police officer was dispatched by radio to investigate an alleged drug transaction. The caller gave the police the address where the transaction was taking place, and stated that a brown pickup truck, Arizona license number NP–6751, was involved. When the officer neared the reported address, he saw a brown pickup headed towards him. When he verified the license number as the same as that given by the caller, he turned around, followed the truck for a short distance, activated his emergency lights, and stopped the vehicle.

Given these facts, we believe the traffic stop was justified. When he stopped the truck, the officer reasonably suspected that a narcotics offense had just occurred or was occurring, and that the driver of the brown pickup was involved.

The officer did not have probable cause to arrest appellant, but probable cause is not required for an investigative stop. The United States Supreme Court stated in *Adams v. Williams*, 407 U.S. 143, 145–46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–617 (1972):

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

Appellant was driving a vehicle allegedly involved in a drug transaction. This would make any police officer suspicious enough to stop appellant to determine his identity, obtain more information, establish probable cause to arrest or dispel the officer's suspicions.

After the officer stopped appellant, he only attempted to establish appellant's identity. His actions were reasonable and consistent with *Terry* and its progeny. The stop was a very minor intrusion on appellant's privacy. As noted in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138,

82 L.Ed.2d 317 (1984), a traffic stop is the least intrusive of all detentions.

The officer was not acting arbitrarily when he stopped appellant's vehicle, nor was he acting to harass appellant. He was acting on a specific, reasoned, articulable basis when he stopped the vehicle. After the stop, his action was reasonably related in scope to the circumstances justifying the stop. The stop of appellant's vehicle was not in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. Therefore, any fruits flowing from the stop were not subject to suppression.

We find two cases cited by appellant distinguishable. In both *State v. Temple*, 65 Haw. 261, 650 P.2d 1358 (1982), and *Glass v. State*, 681 S.W.2d 599 (Tex.Cr. App.1984), the anonymous tip was approved except for the lack of proximity of time and place of the offense in relation to the detention. His remaining authority in support of his challenge to the initial stop, *Olson v. Comm'r. of Pub. Safety*, 371 N.W.2d 552 (Minn.1985), we decline to follow.

There the court disapproved of a stop based on an anonymous tip of "possibly a drunken driver." The court rejected the anonymous tip because it found a lack of credibility in the nature of the tip itself. The informant had given the color and make of the automobile, its license number and location. The police officers verified the accuracy of the information before stopping the vehicle. Because of the detailed information given and its accuracy, we disagree with the court's finding the stop invalid.

An investigative stop will be upheld if the police officers observe facts which corroborate even the innocent details of the tip from an informer. *U.S. v. Roper*, 702 F.2d 984 (11th Cir.1983). The fact that the informant is anonymous does not invalidate the stop. Id; *U.S. v. White*, 648 F.2d 29 (D.C.Cir.), cert. den. 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981). "A valid stop and frisk may be based on information obtained from an anonymous tipster if that information appears sufficiently reliable because of the surrounding circumstances or the nature of the information given in the tip itself." *Hetland v. State*, 387 So.2d 963 (Fla.1980). See *People v. Smithers*, 83 Ill.2d 430, 47 Ill.Dec. 322, 415 N.E.2d 327 (1980); *Graham v. Commonwealth*, 667 S.W.2d 697 (Ky.1984); *State v. Jernigan*, 377 So.2d 1222 (La.1979), cert. den. 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980). Here the tip was very specific as to the vehicle involved, the location given by the informant was in close proximity to the location of the stop, and the stop occurred a short time after the tip was received. We believe the trial court properly denied the motion to suppress.

## PROSECUTORIAL MISCONDUCT

██ Appellant argues that the trial court erred in denying his motion for mistrial. He argues the motion should have been granted because he was denied a fair trial when the prosecutor insinuated the existence of prior bad acts without supporting proof. "Motions for mistrial on the grounds of misconduct of counsel are addressed to the discretion of the trial court, which will not be disturbed on appeal unless plainly abused." *State v. Woods*, 141 Ariz. 446, 455, 687 P.2d 1201, 1210 (1984). For there to be an abuse of discretion in the denial of a motion for mistrial, the misconduct must be found to have influenced the verdict. Id. at 456, 687 P.2d at 1211. As appellant correctly states, it is improper and prejudicial for a prosecutor to impeach a defendant by insinuation or innuendo without offering evidence to prove the misconduct. *State v. Smith*, 146 Ariz. 491, 707 P.2d 289 (1985); *State v. Holsinger*, 124 Ariz. 18, 601 P.2d 1054 (1979). Applying these principles to the case before us, we find no error in the denial of the motion for mistrial.

██ The alleged misconduct occurred when the prosecutor was cross-examining a defense witness. The witness, a psychiatrist, testified as to appellant's alleged character trait of reflexive responses to homosexual overtures. Over the state's objections, the doctor was permitted to relate the facts he considered in arriving at

his opinion that appellant murdered the victim in a fit of reflexive rage. The testimony related the doctor's opinion of the effect on appellant of alleged child abuse, abandonment, rejection and deprivation. The witness also related appellant's own story of drug use, delinquency and repugnance to homosexual advances. To counteract the impression of anti-homosexualism established on direct examination, the prosecutor asked the doctor if he had read and given consideration to the report of appellant's mother wherein she stated that appellant was disciplined twice for homosexual activity at the Adobe Mountain School. The doctor admitted that he had read the report but he stated that he had not believed it. Appellant's mother was called to testify out of the presence of the jury and confirmed that her son had told her he had lost his privileges for alleged homosexual activities. She also stated that the same information had been relayed to her by an official at Adobe Mountain School.

Appellant cites a string of cases for the proposition that a prosecutor cannot, through cross-examination, insinuate matters to be facts when he is not prepared to prove such. *State v. Holsinger,* supra; *State v. Williams,* 111 Ariz. 511, 533 P.2d 1146 (1975); *State v. Singleton,* 66 Ariz. 49, 182 P.2d 920 (1947); *State v. Ballantyne,* 128 Ariz. 68, 623 P.2d 857 (App.1981). We find these cases inapposite. Here the prosecutor was not insinuating the existence of a prior bad act. The witness was a mental health expert who had expressed his opinion of appellant's character trait and its relation to the murder. His opinion was based on documents concerning appellant's upbringing, police reports of the murder, and appellant's statements regarding his upbringing and his recitation of the facts which resulted in the murder. The doctor was permitted to relate the facts contained in the documents he reviewed as support for his opinion. Ariz.R.Evid. 703 and 705, 17A A.R.S. The prosecutor's question sought to determine whether the doctor had considered information that contradicted his opinion. The fact that the doctor rejected the statement of appellant's

mother was the proper subject of cross-examination. Once an expert offers his opinion, it is proper to inquire into the reasons for his opinion, including the facts upon which it is based, and to subject the expert to a most rigid cross-examination concerning his opinion and its sources. *State v. Swafford,* 21 Ariz.App. 474, 520 P.2d 1151 (1974).

### CORONER'S PHOTOGRAPH

Appellant next argues that the trial court erred in admitting into evidence a color coroner's photograph of the victim. He argues that the photograph was highly inflammatory and prejudicial.

■ It is error for the trial court to admit inflammatory photographs of the deceased when such evidence has little or no tendency to prove or disprove a question which is contested. *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983); *State v. Powers,* 117 Ariz. 220, 571 P.2d 1016 (1977). Error of this type "is prejudicial unless it can be said beyond a reasonable doubt that the jury would have convicted even in the absence of error." *State v. Chapple,* supra, 135 Ariz. at 297, 660 P.2d at 1224.

■ Appellant testified and admitted killing the victim. His defenses were that he had acted in self-defense or in a reflexive rage over the alleged homosexual move made by the victim. Appellant was charged with armed robbery and theft. The state contended that appellant had rifled the victim's pockets and taken money and the keys to the victim's truck. The photograph showed the pockets of the victim's trousers partially turned inside out. The murder theory proffered by the state was felony murder. The condition of the victim's pockets corroborated the state's theory that appellant, after stabbing the victim, rifled his pockets for money and the truck keys. The purpose for offering a photograph is the basis for its admission or rejection. *State v. Routhier,* 137 Ariz. 90, 669 P.2d 68 (1983), cert. den. 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984). The decision of the trial court to admit such evidence is discretionary and the ruling will

not be disturbed absent a clear showing of abuse of that discretion. *State v. McCall,* 139 Ariz. 147, 677 P.2d 920 (1983), cert. den. 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). We believe there was a valid basis for admitting the photograph.

## APPELLANT'S STATEMENTS

Appellant's final argument is that the statements he made to the police officers should have been suppressed because the officers violated his Miranda rights.

█ The officer who stopped appellant when he was driving the truck did not advise him of his Miranda rights. The officer testified that appellant was not free to go after he had been stopped. From this appellant argues that he was "in custody" and because he was not warned of his Miranda rights, his statements to the officer should have been suppressed. The United States Supreme Court addressed an issue factually similar to this case in *Berkemer v. McCarty, supra.* There the officer testified that a motorist was not free to go after a traffic stop. The court stated that he was never "in custody" for Miranda purposes until the officer formally advised defendant that he was under arrest, handcuffed him and placed him in the patrol car. The court justified this ruling by likening the traffic stop to a *Terry* investigative stop which it recognized as being beyond the scope of the dictates of Miranda. We have the same situation here, and the officer was not required to warn appellant of his Miranda rights.

█ Appellant also argues that the statements he made to two detectives after he was arrested should have been suppressed because questioning continued after he had invoked his right to remain silent. Once a suspect exercises his right to remain silent, interrogation must stop. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *State v. Carter,* 145 Ariz. 101, 700 P.2d 488 (1985). The question is whether appellant invoked his right to remain silent and did he voluntarily initiate further discussion with the detectives.

█ During the interrogation, the following exchange took place:

Q. John, you also went to the laundry with the man [the victim].

A. To the what?

Q. To the laundry at the apartments.

A. I did?

Q. Some people saw you.

A. I think it's time for me to shut up.

Q. That's entirely up to you John.

A. (inaudible) I mean I've, I've never killed nobody, never. I'll swear it on a stack of bibles as—

Q. Did you tell Bobby that you were down in Tucson?

A. I didn't tell Bobby nothing about what I do, I just—

The questioning continued with no further mention of stopping or a request for counsel.

Appellant argues that his statement that it was time for him to shut up was an invocation of his right to remain silent and any further statements made by him should have been suppressed. The Arizona Supreme Court reviewed a similar situation in *State v. Hicks,* 133 Ariz. 64, 649 P.2d 267 (1982). There the defendant stated at least three times that he was going to shut up and say nothing further. There, as here, the defendant continued to deny his guilt immediately after declaring that he would say no more. The court rejected the argument that Hicks had invoked his right to remain silent stating, "[T]his is a case where appellant did not clearly invoke his right to remain silent, but instead himself initiated further interrogation." Id. at 74, 649 P.2d at 277. We find the reasoning in *Hicks* controlling. Appellant did not clearly invoke his right to remain silent, and the trial court did not err in refusing to suppress his statements.

█ Finally, appellant contends that statements made to a third detective should have been suppressed because he did not make a knowing and intelligent waiver of his right to remain silent. When the detective asked appellant if he would answer some questions, appellant's reply was, "[Y]eah, I guess I'll answer the questions."

Appellant describes his response as equivocal.

The *United States Supreme Court in North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), set the standard for determining whether a waiver of Miranda rights was knowing and intelligent. The court held that conduct would suffice in supporting a ruling that the rights were waived. A defendant does not even have to expressly state that he will waive his rights, so long as he answers the questions freely and does not attempt to terminate the interrogation.

Arizona has adopted the principle of *Butler*. In *State v. Montes*, 136 Ariz. 491, 667 P.2d 191 (1983), the defendant refused to sign a waiver of rights card, but answered the detective's questions. The court held that the defendant had knowingly and intelligently waived his right to remain silent. Here appellant answered the detective with the colloquialism "yeah", meaning yes. He then freely answered the questions. We find no merit to appellant's claim that he did not knowingly and intelligently waive his right to remain silent.

We have reviewed the record for fundamental error and have found none. Appellant's convictions and the sentences imposed are affirmed.

ROLL, P.J., and HOWARD, J., concur.