810 P.2d 569

**Sandra PHARO, Petitioner/Appellant,**

v.

**TUCSON CITY COURT and the Honorable Ann Bowen, a Magistrate thereof, Respondents/Appellees,**

and

**CITY ATTORNEY'S OFFICE, A Real Party in Interest.**

No. 2 CA–CV 90–0065.

Court of Appeals of Arizona, Division 2, Department B.

Sept. 6, 1990.

Reconsideration Denied Oct. 17, 1990.

Review Denied May 21, 1991.*

Stephen Paul Barnard, Tucson, for petitioner/appellant.

Frederick S. Dean, City Atty. by R. William Call and Mary Aivazian, Tucson, for real party in interest.

## OPINION

FERNANDEZ, Chief Judge.

Appellant Sandra Pharo appeals from the superior court ruling that respondent Tucson City Court magistrate Ann Bowen did not abuse her discretion in denying appellant's evidentiary motions in her prosecution for driving under the influence (DUI). We affirm.

Shortly before 9:30 p.m. on December 30, 1988, Tucson police officer Cox was working off-duty for the annual Festival of Lights in the Winterhaven subdivision in Tucson. An automobile stopped at the exit to Winterhaven, and the driver told the officer that a white or light-colored Jeep station wagon with "wood-grain" sides driven by a blonde white woman was making wide turns, driving up on curbs, stopping for no apparent reason, and driving erratically. Shortly thereafter, a second car with two females also stopped, and its occupants gave the officer similar information and handed him a paper with the license number written on it.

Cox radioed for a DUI officer and Officer Sainz of the DUI squad responded with-

* Feldman, V.C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

in minutes. While Cox was giving Sainz the information he had received, the officers saw a car driving toward them that matched the description. They stopped the car. Officer Sainz testified that appellant twice attempted to shift the car from drive to park before she succeeded. He noticed that her eyes were bloodshot. Sainz asked appellant for her driver's license, and she got out of the car with a towel draped across her foot. Appellant appeared to be unaware of the towel until the officer suggested she remove it. Appellant had no difficulty in obtaining her license from the wallet in her purse in the back seat. The officer also saw that appellant's face was flushed, her speech was slurred, her breath had a strong odor of intoxicants, her balance was unsteady, and her moods varied from smiling and cooperative to argumentative and uncooperative. She admitted she had had a few drinks that evening. Appellant showed Sainz a Pima County Attorney's badge and told him she was a Pima County prosecutor. She also asked him at least twelve times why he had stopped her although he answered the question each time. After she refused to perform either field sobriety tests or the horizontal gaze nystagmus (HGN) test, appellant was advised of her *Miranda* rights. They talked further, and Sainz then arrested appellant and advised her of the implied consent law. She declined to submit to an intoxilyzer test. The officer then field released appellant to her mother who had been a passenger in appellant's car.

After appellant was charged with DUI, she filed a motion to suppress her statement that she had had a few drinks that evening, a motion in limine regarding her refusal to submit to a breath test, and a motion to suppress evidence about her physical condition, arguing that the officers had no reasonable suspicion to stop her or probable cause to arrest her. During the two-day evidentiary hearing, Barbara LaWall, a chief deputy in the Pima County Attorney's Office, testified that she was driving the second car that had reported appellant's erratic driving to Officer Cox. She testified that her daughter wrote the license plate number down, and they

gave the paper to Cox. The city magistrate denied the motions, and appellant then filed a special action in superior court. The superior court ruled that the magistrate did not abuse her discretion in denying the motions.

On appeal, appellant contends that the stop and subsequent arrest were unlawful. She argues that the initial stop was improper because it was based on anonymous tips that were not corroborated by the police and because no driving errors were committed in the presence of the police. Appellant also argues that the police had insufficient probable cause to arrest her.

## LEGALITY OF INVESTIGATIVE STOP

■ An investigative stop is lawful if the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant ... [the officer's] intrusion" upon the person's Fourth Amendment rights. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). If the totality of the circumstances provides a "particularized and objective basis" for the officers to suspect that the person is engaged in criminal activity, the stop is permissible. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981).

In this case, two separate motorists had stopped to inform Officer Cox of a person's erratic driving through the Winterhaven area and to express their concern that the person might be under the influence of alcohol. Cox was provided with a description of both the car and the driver and was given the car's license plate number. Because of the large amount of traffic and the number of pedestrians in the area and because of this state's concern about removing impaired drivers from its streets and highways, the officer radioed for a DUI squad officer. Officer Sainz responded almost immediately, and they spotted appellant's car within minutes. Once they corroborated the information Cox had been given by observing that the descriptions and license plate number matched, they were then warranted in stopping the car in

order to ascertain the condition of its driver.

Because the crime with which appellant was charged is operating a motor vehicle while under the influence of intoxicating liquor, the officers were not required to observe appellant commit a traffic violation in order to have a reasonable suspicion to stop her vehicle. This is especially so under the circumstances that existed at the time. The officers were on foot, and traffic in the area was moderately heavy. A stream of cars was exiting the festival, and the police had erected barricades and traffic controls in order to keep traffic flowing smoothly. The officers were not in a position to follow appellant in order to observe her driving. Instead, they stopped appellant based on two separate and substantially identical tips, given personally to Cox by the informants shortly after they observed appellant's conduct, that included details about the nature of appellant's driving.

Those facts make this case distinguishable from two cases cited by appellant. In *State v. Black*, 80 Or.App. 12, 721 P.2d 842 (1986), the court affirmed the granting of a motion to suppress, finding that an officer had invalidly stopped a motorist. The court found the anonymous phone tip unreliable because there was no indication whether the caller had personally observed the driving. There was no corroboration because the officer observed no traffic violations himself. Those facts are similar to those in *Campbell v. State of Washington Department of Licensing*, 31 Wash.App. 833, 644 P.2d 1219 (1982). There a motorist passing a state trooper yelled that a drunk driver was headed southbound. The trooper saw no traffic violations. The court held the subsequent stop invalid.

Appellant has also cited *State v. Teigen*, 381 N.W.2d 529 (Minn.App.1986), which followed *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552 (Minn.1985). In those cases, the stops were held to be illegal because the officers saw no driving violations and the anonymous tips were unreliable. We declined to follow *Olson* in *State v. Stabler*, 162 Ariz. 370, 783 P.2d 816 (App.1989), in which we upheld a stop based on an anonymous tip that a described vehicle was involved in a drug transaction, but both *Olson* and *Teigen* are distinguishable in any event because the tips were phoned in and consisted of nothing more than a vehicle description and a statement that the driver was drunk.

Contrary to appellant's assertion, the recent United States Supreme Court case of *Alabama v. White*, — U.S. ——, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), also supports our conclusion that the stop here was proper. There, the police received an anonymous telephone tip regarding White's possession of cocaine. Although the Court noted that the tip was insufficient by itself to provide a reasonable suspicion to stop, the additional corroboration made by the officers was held to be sufficient.

## PROBABLE CAUSE TO ARREST

■ Appellant next argues that Officer Sainz lacked probable cause to arrest her. We disagree. "Probable cause is information sufficient to justify belief by a reasonable man that an offense is being or has been committed." *State v. Heberly*, 120 Ariz. 541, 544, 587 P.2d 260, 263 (App. 1978). If the trial court's ruling on the existence of probable cause is supported by substantial evidence, we will affirm that ruling. *State v. Marquez*, 135 Ariz. 316, 660 P.2d 1243 (App.1983).

In this case, after the two officers stopped appellant's car, Sainz observed appellant's bloodshot eyes and asked to see her driver's license. Because it was in her purse in the back seat, appellant got out of the car. Sainz then engaged appellant in a discussion after she showed him her county attorney's badge. As a result of his observations of her appearance, her speech, her demeanor, and her condition, Sainz decided to arrest her for DUI. His testimony about those observations was sufficient to establish probable cause to arrest her.

■ Finally, appellant argues that an officer may arrest a person for a misdemeanor without a warrant only when the misdemeanor is committed in his presence, citing A.R.S. § 13–3883(2). We find no merit to

appellant's contention that Sainz could not arrest her because he did not see her commit any driving violations. Appellant was clearly driving the car. The crime of DUI is committed by driving or being "in actual physical control of any vehicle within this state" while under the influence of intoxicating liquor. A.R.S. § 28–692(A). Because the officers saw appellant driving the car, the offense was committed in their presence. Moreover, A.R.S. § 13–3883(4) authorized the arrest under the circumstances where probable cause was, in any event, developed or confirmed during the investigative stop.

Affirmed.

HOWARD and HATHAWAY, JJ., concur.