521 S.E.2d 507

**The STATE, Respondent,**

v.

**Conrad L. SLOCUMB, Appellant.**

**No. 3034.**

Court of Appeals of South Carolina.

Heard April 15, 1999.

Decided Aug. 16, 1999.

Rehearing Denied Nov. 6, 1999.

620

Assistant Appellate Defender Robert M. Dudek, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General Caroline Callison Tiffin, all of The Office of the Attorney General, of Columbia; and Solicitor Warren B. Giese, of Columbia, for respondent.

CONNOR, Judge:

Conrad L. Slocumb appeals his convictions for first degree burglary, first degree criminal sexual conduct, robbery, kidnapping, and escape. We affirm.

## FACTS

On March 6, 1996, Officer Elvin Livingston transported Slocumb, a Department of Juvenile Justice ("DJJ") inmate, from a DJJ facility to a doctor's office for medical treatment. As the officer was driving Slocumb back to DJJ, he escaped.

Slocumb ran to the Briargate Apartments. At the apartment complex, Slocumb approached a female resident (the victim) from the hallway and asked for help in locating someone in the building. The victim tried to assist him. When it appeared that he was going to walk away, she turned and finished unlocking her door. She entered her apartment and turned to close the door but found Slocumb standing in her doorway. He shoved her into the apartment, and she fell back on her couch. When she began screaming, Slocumb told her he had a gun and would shoot her if she was not quiet.

The victim testified Slocumb asked for money and the keys to the car he saw her driving. She gave him a two dollar bill and the car keys. He then unplugged one of her three phones and told her he needed a change of clothes. The victim noticed the word Santee printed on the back of his blue prison uniform. She got some of her fiancé's clothes for him to wear.

He told her he wanted the shirt she was wearing and she resisted. When he insisted and reminded her that he had a gun, she took off her shirt. He then announced he was going to have sex with her. The victim testified Slocumb raped her. Slocumb then got dressed in the clothes that the victim had given him.

The victim gave Slocumb all the jewelry she was wearing except her engagement ring, which she managed to hide. Slocumb began looking through drawers in the bedroom, saying he needed another weapon. He found no gun but did find two more watches, which he took. He went into another bedroom, unplugged the victim's cordless phone base, and emptied her jewelry box. After spending approximately forty minutes in the apartment, Slocumb left and the victim called 911. The victim never saw a gun.

Shortly thereafter, Slocumb was apprehended in the parking lot of the Briargate Apartments. When they searched Slocumb, officers found a set of keys, two or three watches, a two dollar bill, and some jewelry. He told officers he had a gun, but a gun was never recovered. From a window in her apartment building, the victim identified Slocumb. Slocumb gave a statement to the police, admitting the alleged events with some variations.

The Richland County Grand Jury indicted Slocumb for first degree burglary, first degree criminal sexual conduct, kidnapping, armed robbery, and escape. At trial, Slocumb asserted the defense of insanity as to all charges.[1] Ultimately, the judge charged the jury on the law of insanity and guilty but mentally ill.

The jury found Slocumb guilty of all charges except armed robbery. Instead of armed robbery, the jury convicted Slocumb of common law robbery. This appeal follows.

1. Prior to trial, the judge conducted a competency hearing pursuant to *State v. Blair*, 275 S.C. 529, 273 S.E.2d 536 (1981). Dr. Donald William Morgan, an expert in forensic psychiatry, evaluated Slocumb concerning his competency and criminal responsibility. Based on his evaluation, he concluded Slocumb was competent to stand trial. After considering Dr. Morgan's testimony, the trial judge ruled Slocumb was competent to stand trial.

## DISCUSSION

### I.

■ Slocumb argues the trial judge erred in admitting evidence of bad acts he committed while at DJJ. Slocumb reasons that because he did not testify, or put his character at issue, the admission of these acts, particularly because of their sexual nature, was more prejudicial than probative. He asserts the evidence should have been excluded under Rule 403, SCRE.

During the defense's case-in-chief, Slocumb made a motion *in limine* to determine what prior bad acts the State might try to admit through cross-examination of Dr. Donna Schwartz–Watts, a psychiatrist that defense counsel intended to call as a witness. The assistant solicitor indicated he intended to admit evidence of Slocumb's bad acts while at DJJ to refute Slocumb's claim of insanity, but did not intend to admit evidence of the crimes for which he was incarcerated in DJJ. The solicitor sought to admit the testimony through Rule 703, SCRE, because it was his understanding Dr. Schwartz–Watts and Dr. Morgan, another defense psychiatrist, used Slocumb's entire DJJ file in reaching their opinions regarding his mental status. As such, the defense experts could not "pick and choose" which documents the jury would consider. He contended all of the educational, psychological, and behavioral records were relevant to the bases of the experts' opinions. The judge then heard Dr. Schwartz–Watts's testimony.

Dr. Schwartz–Watts, a forensic psychiatrist employed with the William S. Hall Psychiatric Institute, opined Slocumb suffered from a conduct disorder and cyclothymia, a mood disorder which she described as "a major mental illness, but it's more mild, in terms of a mood disorder compared to a major depression or manic disorder." She believed, however, Slocumb was criminally responsible for his acts. Although she requested Slocumb's behavioral records when making her evaluation, she did not receive them and thus, had not considered them in forming her opinion. Even though she did not think the records would have changed her opinion in any way, she stated the records "would have been useful to document any decisions or diagnosis we would have made." She further

testified a defendant's adjustment to incarceration would be a "major factor that we would need ... when evaluating someone."

On cross-examination, the solicitor showed Dr. Schwartz–Watts several DJJ incident reports which detailed numerous incidents of Slocumb's inappropriate sexual behavior. The incidents included sexually graphic comments and letters and sexual conduct directed at other juvenile inmates and DJJ staff members. Dr. Schwartz–Watts testified the incident reports corroborated her opinion.

At the conclusion of the testimony, the solicitor told the judge he agreed evidence of these bad acts would not be admissible if experts were not testifying in Slocumb's defense. Defense counsel argued the evidence was inadmissible under *State v. Lyle*,[2] and that even if any of the incidents were within a *Lyle* exception, the evidence would still be inadmissible under Rule 403, SCRE, as unduly prejudicial. The assistant solicitor argued Rule 403 "deals with *Lyle* issues of substantive evidence when the State intends on introducing it in its case-in-chief. We never had any intent, and I agree it would have been a violation of the law to allow this in our case-in-chief." However, he contended that once the defense put up an affirmative defense of insanity, the burden shifted back to the State to prove beyond a reasonable doubt that Slocumb was sane at the time of the incident. He further asserted Slocumb's conduct in DJJ supported the State's experts' opinions and diagnoses.

The trial judge ruled the evidence admissible under Rule 703, SCRE. He concluded the DJJ reports were the type of information that an expert would reasonably rely upon in formulating an opinion. Furthermore, the judge found under Rule 403, SCRE, the probative value was not substantially outweighed by the danger of any unfair prejudice to Slocumb. Based on this analysis, the judge permitted cross-examination using these records.

Because defense counsel did not call Dr. Schwartz–Watts as a witness, the State did not cross-examine her with the DJJ incident reports. The State, however, did cross-examine Dr.

2. 125 S.C. 406, 118 S.E. 803 (1923).

James Merikangas, who was called by defense counsel as an expert witness in neurology and psychiatry. In evaluating Slocumb, Dr. Merikangas ordered an MRI, a SPECT scan, and several blood tests on Slocumb. In addition to these test results, Dr. Merikangas reviewed numerous reports and records which included interviews with Slocumb's family members, DJJ psychiatric records, DJJ service notes and behavior reports, DJJ medication and medical records, State hospital evaluations, a report from Dr. James Evans, an expert in neuropsychology, and Dr. Morgan's and Dr. Schwartz–Watts's notes and reports. He also interviewed Slocumb and conducted a neurological examination.

Dr. Merikangas opined Slocumb had organic brain abnormalities as the result of a head injury that he suffered as a child. He diagnosed Slocumb with a "chronic, long-standing" mental illness. As a result of this mental disease or defect, Dr. Merikangas believed Slocumb was legally insane at the time he committed the offenses for which he was on trial. He also stated Slocumb lacked sufficient mental capacity to conform his conduct to the requirements of the law. He attributed Slocumb's conduct in part to a withdrawal from certain medication Slocumb had been receiving for the treatment of his mental illness.

Dr. Merikangas disagreed with the opinions of Dr. Morgan, Dr. Schwartz–Watts, and Dr. Tiller, a doctor also on the team that evaluated Slocumb. Specifically, he disagreed with their opinion that Slocumb was sane at the time of the crime and that Slocumb was cyclothymic.

Over defense counsel's objection, the State cross-examined Dr. Merikangas concerning Slocumb's DJJ incident reports. Dr. Merikangas stated he had seen the documents prior to trial. After the assistant solicitor read excerpts from the reports, Dr. Merikangas testified this conduct was not aggressive sexual behavior. However, he also admitted some of these incidents were inappropriate and some were not normal.

Slocumb argues the trial judge erred in allowing the DJJ incidents through the State's cross-examination of Dr. Merikangas.

The admission of evidence is within the trial judge's discretion and will not be disturbed on appeal absent abuse of

that discretion. *State v. Tucker,* 319 S.C. 425, 462 S.E.2d 263 (1995), *cert. denied,* 516 U.S. 1080, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996). The scope of cross-examination is within the discretion of the trial judge, whose decision will not be reversed on appeal absent a showing of prejudice. *State v. Sherard,* 303 S.C. 172, 399 S.E.2d 595 (1991).

Slocumb primarily asserts the DJJ incident reports were inadmissible under *Lyle,* and should have been excluded under Rule 403, SCRE. Because this issue and Slocumb's second issue involve the admission of expert testimony, a discussion of several interrelated rules of evidence is required for our analysis.

█ Rule 703, SCRE provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Rule 705, SCRE provides:
The expert may testify in terms of opinion or inference and give reasons therefor without first testifying to the underlying facts or data, unless the court requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

Even if admissible under Rule 703 or Rule 705, however, the determination of whether an expert may testify to the facts underlying an opinion must include an analysis under Rule 403, SCRE. *United States v. Gillis,* 773 F.2d 549, 554 (4th Cir.1985); *see* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6293, at 418 (1997) ("[W]here examination of an expert may delve into matters that may be confusing, unfairly prejudicial, or a waste of time, admissibility may be governed by Rule 403."); *Id.* § 6273, at 322 ("[E]ven though an expert's opinion is based on matters deemed by Rule 703 to be proper, the trial court still has discretion under Rule 403 to exclude the expert's opinion in an appropriate case."); 2 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* Article VII, at 1438 (7th ed. 1998) (A cross-examiner's right under Rule 705 to inquire into the

details of an expert's opinion is subject to limitation under Rules 403 and 611(a)). Under Rule 403, SCRE, the testimony "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Although each of these three rules is involved to some extent in this case, the primary provision is the second sentence of Rule 705, which states an expert may be "required to disclose the underlying facts and data on cross-examination." Under this provision a cross-examiner is permitted "to ask the expert to reveal otherwise inadmissible underlying information to the jury." 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 705.05 (Joseph M. McLaughlin ed., Matthew Bender 2d ed. 1999).

The scope of a cross-examiner's right under Rule 705 is best stated in McCormick's treatise on evidence:

> On cross-examination in the process of probing the witness' qualifications, experience, bases, and assumptions opposing counsel may require the expert to disclose the facts, data, and opinions underlying the expert's opinion not previously disclosed. With respect to facts, data, or opinions forming the basis of the expert's opinion, disclosed on direct examination or during cross-examination, the cross-examiner may explore whether, and if so how, the non-existence of any fact, data, or opinion or the existence of a contrary version of the fact, data, or opinion supported by the evidence, would affect the expert's opinion. Similarly the expert may be cross-examined with respect to material reviewed by the expert but upon which the expert does not rely. Counsel is also permitted to test the knowledge, experience, and fairness of the expert by inquiring as to what changes of conditions would affect his opinion, and in conducting such an inquiry, subject to the requirements of Fed.R.Evid. 403, the cross-examiner is not limited to facts finding support in the record.

1 Kenneth S. Broun et al., *McCormick on Evidence* § 13, at 56–57 (John William Strong ed., 4th ed. 1992).

Our research reveals no South Carolina cases which deal with the precise issue raised in this case. As such, we find two federal cases interpreting Rules 703 and 705 particularly instructive. In *United States v. Gillis*, 773 F.2d 549 (4th Cir.1985), the defendant was tried and convicted of five counts of transporting stolen property in interstate commerce. At trial, the defendant admitted the allegations but relied on a dual defense of lack of specific intent and insanity, both of which were based primarily on his gambling problems. The defendant called two expert psychological witnesses. The first witness had examined the defendant and testified for him in a 1980 prosecution for transporting a stolen motor vehicle in interstate commerce and kidnapping. In a preliminary hearing, the trial judge ruled the government could not introduce in its case-in-chief the circumstances of that conviction. During direct examination, the doctor testified the defendant suffered from pathological gambling, and stated he based his conclusion on his 1980 diagnosis and the fact the defendant had failed to receive proper treatment. After the trial judge conducted an *in camera* hearing to question the doctor about the basis of his opinion, he permitted the government to inquire on cross-examination into the specific conduct involved in the prior offense.

On appeal, the defendant argued the trial judge erred in admitting the testimony. He asserted the cross-examination was unduly prejudicial because it informed the jury he had previously been charged with a similar crime and had unsuccessfully attempted to rely on the same defense. The Fourth Circuit Court of Appeals affirmed the defendant's convictions. The Court held that once the defendant asked the doctor about the 1980 diagnosis, its factual basis became relevant and subject to cross-examination under Rule 705. *Id.* at 554. In reaching this conclusion, the Court noted prosecutors are generally granted wide latitude in cross-examining expert witnesses on this type of issue given the importance of developing the factual basis of psychiatric testimony regarding mental responsibility. *Id.* The Court determined the testimony concerning the defendant's past conduct was relevant given the doctor took it into account in forming his diagnosis. It found the trial judge properly inquired about the prejudicial versus probative value of the testimony under Rule 403. *Id.*

Additionally, the Court pointed out the government avoided any reference to the outcome of the defendant's prior trial. *Id.*

In *United States v. A & S Council Oil Co.*, 947 F.2d 1128 (4th Cir.1991), the defendant was tried and convicted for conspiracy to defraud the government through false claims. The government's principal witness, who implicated the defendant's involvement in the conspiracy, was of questionable credibility given his history of mental illness. Prior to trial, this witness submitted to a polygraph test at the request of the government. The government's polygraph examiner concluded this witness was "not truthful" when he implicated the defendant in the scheme. The trial judge granted the government's motion *in limine* to prohibit the admission of the polygraph evidence. At trial, the government called a psychiatrist to bolster the witness' credibility. During this testimony, the government offered the psychiatrist's report, which stated the witness was competent. Defense counsel sought to cross-examine the psychiatrist with materials he had seen, including the polygraph results. Counsel contended he had the right to inquire into all facts underlying the expert's opinion. The trial judge denied defense counsel's motion, holding the polygraph results were inadmissible.

On appeal, the Fourth Circuit Court of Appeals reversed the defendant's convictions. In reaching this decision, the Court held it could not overturn the trial judge's decision concerning the admissibility of the polygraph results as substantive evidence. The Court's decision was based on Fourth Circuit precedents which precluded direct attacks on or bolstering of the credibility of a witness through evidence the witness had taken a polygraph test. *Id.* at 1134. However, the Court found the trial judge erred in prohibiting defense counsel from cross-examining the psychiatrist as to the bases of his opinion, including inquiry about the government witness' polygraph result. *Id.* at 1135.

The Court reasoned that under Rule 703, the data upon which an expert bases his or her opinion need not be admissible in evidence. "However, to counteract the potential advantage this liberalized rule confers on the proponent of the opinion, Rule 705 permits the cross-examiner to require the

expert to reveal otherwise-inadmissible underlying information before the jury, subject only to [Rule] 403's prejudice/probative value balancing test." *Id.* at 1134. In discussing the interrelationship between these rules of evidence, the Court stated, "Rule 703 creates a shield by which a party may enjoy the benefit of inadmissible evidence by wrapping it in an expert's opinion; Rule 705 is the cross-examiner's sword, and, within very broad limits, he may wield it as he likes." *Id.* at 1135. Applying this analysis, the Court concluded the polygraph result was relevant to the psychiatrist's credibility because he must have necessarily discounted it to reach his opinion. *Id.* The Court emphasized the polygraph result was admissible as an attack on the psychiatrist's opinion, but not directly on the government witness' credibility. *Id.*

Turning to the facts of the instant case, we find the trial judge did not err in permitting the State to cross-examine Dr. Merikangas with Slocumb's DJJ incident reports. Dr. Schwartz–Watts testified these reports were the type relied upon by experts in the field in forming an opinion or diagnosis. In addition to the tests he ordered, Dr. Merikangas testified he reviewed numerous reports and records which included, interviews with Slocumb's family members, DJJ psychiatric records, DJJ service notes and behavior reports, DJJ medication and medical records, State hospital evaluations, a neuropsychological report from Dr. Evans, and Dr. Morgan's and Dr. Schwartz–Watts's notes and reports. Dr. Merikangas stated on both direct examination and cross-examination he had reviewed the DJJ incident reports prior to trial. In fact, on direct-examination, Dr. Merikangas acknowledged he had reviewed "good reports" and "bad reports." He stated in some of these reports Slocumb was "very helpful" and in other cases he was "lewd and obscene."

The DJJ incident reports comprised a significant segment of the records Dr. Merikangas reviewed in formulating his opinion. As his testimony indicated, he discounted the reports given they did not affect his opinion that Slocumb was insane at the time he committed the offenses. By cross-examining Dr. Merikangas with these reports, the State was able to demonstrate that some of the underlying data used in reaching his opinion about Slocumb's mental state was directly contrary to or called into question that opinion. Accordingly,

cross-examination was proper to explore the basis for Dr. Merikangas's opinion, particularly where Slocumb relied on the defense of insanity. Therefore, these reports were relevant to the jury's assessment of Dr. Merikangas's opinion. *See United States v. Whitetail,* 956 F.2d 857 (8th Cir.1992) (in murder prosecution in which the defendant claimed self-defense based on battered-woman syndrome, trial judge did not err in permitting the prosecutor to cross-examine the defendant's expert witnesses on evidence of defendant's prior bad acts and her reputation for violence because these questions addressed the underlying facts or data upon which they based their opinions).

■ Because the State's cross-examination was proper under Rule 705, SCRE, we disagree with Slocumb's contention the evidence was inadmissible under *Lyle* and constituted improper character evidence.[3] The evidence was not offered to prove the crimes for which Slocumb was charged or to prove Slocumb had a propensity to commit these crimes. Instead, as previously discussed, the evidence was elicited as part of proper cross-examination of Dr. Merikangas's opinion that Slocumb was insane. The State's cross-examination focused on establishing that Slocumb was sane, and the records were directly related to an evaluation of Slocumb's state of mind. Furthermore, the State in its case-in-chief did not refer to these incident reports nor did it attempt to admit Slocumb's prior criminal sexual conduct conviction for which he was incarcerated at DJJ. *See State v. Faulkner,* 274 S.C. 619, 266 S.E.2d 420 (1980) (Although the State may not attack a criminal defendant's character unless he or she places it in issue, relevant evidence properly admissible for other pur-

---

**3.** *See State v. Peake,* 302 S.C. 378, 380, 396 S.E.2d 362, 363 (1990) ("Evidence of prior criminal acts which are independent and unconnected to the crime for which an accused is on trial is inadmissible for purposes of proving that the accused possesses a criminal character or has a propensity to commit the crime for which he is charged."); *State v. Lyle,* 125 S.C. 406, 118 S.E. 803 (1923) (Evidence of other crimes or bad acts is generally inadmissible to prove the crime charged unless the evidence tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) identity). We note the common law rules concerning the admission of character evidence and evidence of other crimes or bad acts have been codified in Rule 404, SCRE. *State v. Nelson,* 331 S.C. 1, 6, 501 S.E.2d 716, 718–19 n. 7 (1998).

poses need not be excluded merely because it incidentally reflects on his or her character.).

Additionally, given these reports were relevant and the subject of proper cross-examination, we cannot say the trial judge abused his discretion in finding the probative value of this testimony outweighed the danger for unfair prejudice. *See United States v. Green,* 887 F.2d 25, 27 (1st Cir.1989) (A trial judge's decision regarding the comparative probative value and prejudicial effect of evidence should be reversed only in "exceptional circumstances."); *United States v. Long,* 574 F.2d 761 (3d Cir.), *cert. denied,* 439 U.S. 985, 99 S.Ct. 577, 58 L.Ed.2d 657 (1978) (A trial judge's balancing decision under Rule 403 should not be reversed simply because an appellate court believes it would have decided the matter otherwise because of a differing view of the highly subjective factors of the probative value or the prejudice presented by the evidence.); *Id.* at 767 ("If judicial self-restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal."). Moreover, the trial judge instructed the jury that evidence of bad reputation may not be considered as evidence of guilt.

Other jurisdictions have reached the same result. *See, e.g., State v. Stabler,* 162 Ariz. 370, 783 P.2d 816 (App.1989) (pursuant to Rules of Evidence 703 and 705, prosecutor was permitted to cross-examine the defendant's mental health expert, who testified the defendant murdered the victim "in a fit of reflexive rage," by asking about a report reviewed by the expert which contradicted his opinion and inferred prior bad acts of the defendant given this cross-examination was not offered to insinuate the existence of a prior bad act, but rather, to inquire into the reasons for the expert's opinion); *State v. Samuel,* 74 Haw. 141, 838 P.2d 1374 (1992) (in prosecution for murder, defense counsel was not ineffective for permitting cross-examination of the defendant's expert concerning the defendant's prior bad acts where evidence pertained to facts upon which the expert based his opinion of the defendant's mental state); *State v. Clowney,* 299 N.J.Super. 1, 690 A.2d 612 (1997) (where defendant offered a psychologist to support his claim of diminished capacity due to a "blackout" at the time of the crime, prosecutor was permitted to cross-examine the expert with the defendant's school records which

evidenced defendant's manipulative behavior, his power complex, and his use of violence to satisfy this complex without "blackouts" given the evidence was not used to establish the defendant's profile as a rapist, but rather, to probe the soundness of the expert's opinion that the defendant lacked the required state of mind); *State v. Lyons,* 343 N.C. 1, 468 S.E.2d 204, *cert. denied,* 519 U.S. 894, 117 S.Ct. 237, 136 L.Ed.2d 167 (1996) (pursuant to Rule of Evidence 705, prosecutor's cross-examination of defendant's psychologist regarding the defendant's behavior during prior incarceration in another state was not improper where the expert testified he used the state's department of corrections' records as a basis for formulating his opinion that the defendant suffered from bipolar disorder); *State v. DeGraw,* 196 W.Va. 261, 470 S.E.2d 215 (1996) (in murder prosecution where defendant relied on the defense of diminished capacity, prosecutor was permitted to cross-examine the defendant's expert witness on the defendant's past criminal activity in order to determine the basis and validity of the expert's opinion).

## II.

■ Slocumb also argues the trial judge erred in allowing the State to impeach Dr. Merikangas with the report of a doctor who did not testify.

Prior to Dr. Merikangas's direct examination, defense counsel made a motion *in limine* concerning a report which was generated as a result of Slocumb's MRI. She informed the trial judge the defense had requested the MRI, but did not request a report interpreting the films. According to defense counsel, a report was issued and sent to the State Hospital. She disclosed this report to the State prior to trial. However, she told the solicitor the report was not given to Dr. Merikangas, and therefore, he did not rely on it in formulating his opinion. Moreover, she stated she could not vouch for the credibility of the doctor who issued the report. Counsel further argued the State was required to call the doctor who issued the report in order to cross-examine Dr. Merikangas on the contents of the report.

In response, the assistant solicitor argued the rules of evidence permitted cross-examination of Dr. Merikangas with

the report. He asserted that because experts can base their opinions on the reports of others, they could also be cross-examined with reports that contradict their opinions. The trial judge ruled the State could cross-examine Dr. Merikangas with the MRI report under Rule 703, SCRE.

During direct examination, Dr. Merikangas testified he based his opinion that Slocumb was legally insane upon various medical tests he ordered, including an MRI which showed brain abnormalities. On cross-examination, the State presented Dr. Merikangas with the MRI report. Dr. Merikangas indicated he had not seen the report prior to trial. After reviewing the report, he admitted it concerned the same MRI he had ordered. He acknowledged the report was contrary to his opinion in that the doctor had concluded the MRI was normal. On re-direct examination, Dr. Merikangas testified he did not order a diagnosis of the MRI because he did not need it to interpret the films. He further testified he did not know anything about the qualifications of the doctor who issued the report.

As previously discussed, under Rule 705, SCRE, an expert witness may be cross-examined concerning the facts and data upon which the expert relied in formulating an opinion. Although the cross-examiner is given great latitude, the scope of cross-examination of an expert witness is not without limits. Authority exists which prohibits the State's cross-examination of Dr. Merikangas with the MRI report. Specifically, McCormick's treatise on evidence states, "[i]t is ... improper to inquire of the expert whether his opinion differs from another expert's opinion, not expressed in a learned treatise, if the other expert's opinion has not itself been admitted in evidence." 1 Kenneth S. Broun et al., *McCormick on Evidence* § 13, at 57 (John William Strong ed., 4th ed. 1992); *see also* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6294, at 430–31 (1997) (Rule 705 "fails to give the cross-examiner a right to question the witness about facts and data on which the expert did not rely.").

Federal courts interpreting Rule 705 have followed this principle. The Fifth Circuit Court of Appeals analysis in *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541 (5th Cir.1978), provides guidance for our decision. In *Bryan*, the

plaintiff, an automobile mechanic, was injured when he was struck with pieces of a cast-iron tool which broke under pressure while it was being used to bend an automobile axle for wheel alignment. He sued John Bean, the corporation that designed and distributed the tool. John Bean filed a third-party claim for contribution or indemnity against Midland–Ross, the company that allegedly cast the tool. At trial, both sides offered metallurgical experts. Midland Ross's expert based his opinion in part on the reports of two non-testifying experts, one expert for Bryan and the other expert for John Bean. Both of these non-testifying experts issued reports which contained their opinions on the reason the tool failed. On cross-examination of Midland Ross's expert, the plaintiff's counsel read the opinions verbatim from the reports.

Midland–Ross objected to this cross-examination on the ground the facts recited in the reports were admissible, but the opinions of the experts were not. The court overruled this objection, stating the opinions were admissible because they were supporting data for Midland–Ross's expert's opinion.

On appeal, the Fifth Circuit Court of Appeals held the trial judge erred in admitting this evidence. In reaching this decision, the Court discussed Rules 703 and 705 of the Federal Rules of Evidence. The Court noted these two rules "permit[ ] the disclosure of otherwise hearsay evidence for the purpose of illustrating the basis of the expert witness' opinion." *Id.* at 545. Despite this rule of limited admissibility, the Court held the evidence was "improperly admitted either as evidence of the basis of the testifying expert's opinion or as impeachment evidence." *Id.*

The Court reasoned the opinions of the non-testifying experts lacked both necessity and trustworthiness, two factors the Court characterized as critical to establishing exceptions to the hearsay rule. *Id.* In terms of the necessity factor, the Court noted the experts could have been called as witnesses. More importantly, the experts' opinions lacked any independent guarantee of trustworthiness that would have justified dispensing with cross-examination of these experts. *Id.* at 546. Furthermore, the Court stated, "to admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opin-

ion unless the expert has been qualified before the jury to render the opinion." *Id.* The Court also found the admission of this evidence allowed the plaintiff's counsel, under the guise of impeachment, to argue substantive evidence that did not impeach the testifying expert. *Id.* Although the testifying expert admitted he used the statistics contained in the reports to reach his own conclusions, he did not admit he relied on the conclusions reached by the other two experts. As such, the Court stated the statistics from the reports and the expert's reliance on them were properly brought out under Rule 705. *Id.* However, the conclusions reached by the other experts, which did not impeach the testifying expert's conclusions, were argued substantively without permitting cross-examination. *Id.* at 547.

We are guided by the analysis in *Bryan* in reaching our decision on this issue. Here, Dr. Merikangas, an expert in neurology and psychology, testified he did not rely on the non-testifying doctor's MRI report because he did not need it to interpret the MRI or to formulate his opinion. Therefore, even if Dr. Merikangas had seen the report prior to trial, like the expert in *Bryan,* he did not rely on the doctor's conclusions. By using this report, the State admitted substantive hearsay evidence of another opinion without subjecting the doctor to cross-examination. *See Bobb v. Modern Prods., Inc.,* 648 F.2d 1051, 1056 (5th Cir.1981), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (5th Cir.1997) (The trial judge erred in permitting the defendant to cross-examine the plaintiff's expert witness with the deposition of another expert which had not been admitted into evidence because "[p]laintiff's witness did not state that he had relied on the report, even though he had admitted that he had seen it. Until defendant established that plaintiff had relied on the report of the other doctor, it was improper for the defendant to read from that report in cross-examining plaintiff's witness.").

As in *Bryan,* the doctor's opinion also lacked both the necessity and trustworthiness factors to establish exceptions to the hearsay rule. The State could have called the doctor as a witness. Because the State did not call the doctor, the expert's qualifications were never ruled on by the court and the jury had no way of knowing on what basis the doctor

formulated his conclusion. Accordingly, we find the trial judge erred in permitting the State to cross-examine Dr. Merikangas with the MRI report.

Our decision is consistent with at least one South Carolina case which was decided prior to this State's adoption of the rules of evidence. *Cf. City of Spartanburg v. Laprinakos,* 267 S.C. 589, 230 S.E.2d 443 (1976) (in condemnation case, trial judge erred in permitting landowners' counsel to cross-examine City's real estate expert with the contents of a non-testifying third-party appraisal in that this subject matter could have been used only for impeachment purposes had the expert considered the information and based his opinion on it).

Several other state courts have found this type of cross-examination improper. *See, e.g., Sharman v. Skaggs Cos.,* 124 Ariz. 165, 602 P.2d 833 (App.1979) (opinion of defendant's non-testifying medical expert as to cause of plaintiff's injury could not be used to cross-examine the plaintiff's medical expert given the opinion was not made available until trial and the plaintiff's expert did not consider it in formulating his opinion); *State v. Spencer,* 319 N.J.Super. 284, 725 A.2d 106 (1999) (trial judge erred in permitting prosecutor to cross-examine defendant's expert pathologist with a hearsay report containing the opinion of defense's forensic pathologist who did not testify at trial because the testifying expert did not rely on the conclusions of the forensic pathologist in formulating his opinion even though he had reviewed them); *Commonwealth v. Fried,* 382 Pa.Super. 156, 555 A.2d 119 (1989) (non-testifying expert's findings made in autopsy report were admissible in cross-examining expert witness who admitted he had relied on these findings, however, the non-testifying expert's conclusions which differed from those of the expert were inadmissible because the non-testifying expert was not subject to cross-examination); *cf. State v. White,* 343 N.C. 378, 471 S.E.2d 593, *cert. denied,* 519 U.S. 936, 117 S.Ct. 314, 136 L.Ed.2d 229 (1996) (prosecutor permitted to cross-examine defense's expert witness with reports containing conclusions of non-testifying expert where non-testifying expert reported these conclusions to defense expert who relied on them in formulating his opinion); *but see People v. Pasch,* 152 Ill.2d 133, 178 Ill.Dec. 38, 604 N.E.2d 294 (1992) (prosecutor permitted to impeach defendant's expert witness with reports of non-testifying doc-

tors' reports on which the defendant's expert did not rely in formulating his opinion in that the reports were for the limited purpose of impeaching the witness).

■ Although we find the trial judge erred in permitting this cross-examination, we believe the error was harmless because the improper cross-examination evidence was cumulative to other properly admitted evidence. *See State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993) (Any error in the admission of evidence cumulative to other unobjected-to evidence is harmless.); *State v. Johnson*, 298 S.C. 496, 499, 381 S.E.2d 732, 733 (1989) ("The admission of improper evidence is harmless where it is merely cumulative to other evidence.").

In reply, the State called Dr. Schwartz–Watts as an expert in forensic psychiatry. During direct examination, the assistant solicitor questioned Dr. Schwartz–Watts about Dr. Merikangas's testimony. She acknowledged Dr. Merikangas believed the MRI indicated Slocumb had brain damage. Dr. Schwartz–Watts stated she understood Dr. Merikangas's interpretation of the MRI differed from that of the doctor who issued the MRI report. She further testified she does not review MRIs, but instead, relies on the radiologist's report interpreting the MRI. Even assuming Dr. Merikangas's interpretation was correct, Dr. Schwartz–Watts testified the existence of brain damage does not necessarily make someone insane or not criminally responsible. On re-direct examination, the assistant solicitor asked Dr. Schwartz–Watts whether any of the documents she had seen or questions she had been asked during her testimony had altered or changed her opinion concerning Slocumb's criminal responsibility. She responded her opinion remained the same.

The State also called Dr. Morgan, a professor in psychiatry and acting director of the William S. Hall Psychiatric Institute. Dr. Morgan was qualified as a forensic psychiatry expert. He personally evaluated Slocumb. He also worked as part of the team, which included Dr. Schwartz–Watts, that evaluated Slocumb. Based on his evaluation and review of all the available data and reports, Dr. Morgan concluded Slocumb's mental illness did not "in any way [keep] him from knowing what he was doing and know what he was doing was wrong." He believed that despite the mental illness, Slocumb

knew right from wrong and was able to conform his conduct to the requirements of the law at the time he committed the offenses for which he was charged. On cross-examination, defense counsel questioned Dr. Morgan about Slocumb's MRI. Dr. Morgan testified he relied on the MRI report in issuing his report on Slocumb.

Pursuant to Rules 703 and 705, SCRE, an expert may testify about the facts or data upon which he or she bases an opinion. The facts or data need not be admissible into evidence, as long as they are of a "type reasonably relied upon by experts in the particular field." Rule, 703, SCRE; *see State v. Hutto*, 325 S.C. 221, 224, 481 S.E.2d 432, 433 (1997) ("[I]t is well-settled that an exception to the rule prohibiting hearsay exists when it is used by an expert. An expert may base his opinion on hearsay evidence so long as it is of a type reasonably relied upon by other experts in the field."). Therefore, "[f]acts, data or opinions reasonably relied upon under Rule 703 may be disclosed to the jury on either direct or cross-examination to assist the jury in evaluating the expert's opinion by considering its bases." 2 Michael H. Graham, *Handbook of Federal Evidence § 703.1*, at 110 (4th ed. 1996). "This is true even if the facts, data or opinions have not themselves been admitted and thus may not be considered for their truth." *Id.*

By calling Dr. Schwartz–Watts and Dr. Morgan in reply, the State offered their expert opinions for the jury to compare with Dr. Merikangas's opinion. Dr. Schwartz–Watts and Dr. Morgan gave opinions based on all the information they had reviewed prior to trial as well as what they had heard or perceived during trial. The MRI report was part of the data on which they relied in formulating their opinions. Dr. Evans, Dr. Schwartz–Watts, and Dr. Morgan testified the report was a document upon which they routinely relied in conducting an evaluation.

Because Dr. Schwartz–Watts and Dr. Morgan relied on this report, they were permitted to testify about it as a basis for their opinion. *See State v. Franklin*, 318 S.C. 47, 456 S.E.2d 357, *cert. denied*, 516 U.S. 856, 116 S.Ct. 160, 133 L.Ed.2d 103 (1995) (psychiatrist who did not personally examine the defendant was permitted to render an opinion based on reports

prepared by others who examined the defendant but did not testify at trial); *see also Ellis v. Oliver*, 323 S.C. 121, 473 S.E.2d 793 (1996) (in medical malpractice case, plaintiff's experts properly permitted to testify concerning their opinions which were based in part on hearsay statements contained in plaintiff's medical records and on deposition testimony by medical professionals in a separate action); *Creed v. City of Columbia*, 310 S.C. 342, 426 S.E.2d 785 (1993) (plaintiff's treating physician permitted to render opinion concerning plaintiff's mental and emotional injuries where physician relied on tests and a report issued by a non-testifying neuropsychologist); *Howle v. PYA/Monarch, Inc.*, 288 S.C. 586, 344 S.E.2d 157 (Ct.App.1986) (plaintiff's psychologist permitted to render expert opinion even though opinion was based in part on inadmissible hearsay gathered from plaintiff and her family given the information was not being offered for the truth of the matters asserted, but rather, as one of the bases of the expert's opinion).

The admission of the contents of the report during the direct-examination of Dr. Schwartz–Watts and Dr. Morgan is seemingly inconsistent with its exclusion during Dr. Merikangas's cross-examination. However, unlike Dr. Merikangas, both Dr. Schwartz–Watts and Dr. Morgan had relied on the MRI report in formulating their opinions. As such, they were not mere conduits of hearsay information. During their testimonies the report was not admitted for the truth of the matter asserted, as it had been during Dr. Merikangas's testimony. Rather, it was offered as a basis of their opinions as permitted under Rule 703, SCRE.

Because the erroneous admission of the MRI report during Dr. Merikangas's cross-examination was cumulative to the properly admitted evidence, the error was harmless.

Accordingly, Slocumb's convictions are

**AFFIRMED.**

HOWELL, C.J., and GOOLSBY, J., concur.