THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(D)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 
 
 

v.

 
 
 
 Eric Andrew Rieb, Appellant.
 
 
 

Appeal From Horry County
 Steven H. John, Circuit Court Judge

Unpublished Opinion No. 2005-UP-222
Submitted March 1, 2005  Filed March 29, 2005

AFFIRMED

 
 
 
 Assistant Appellate Defender Robert M. Dudek, of Columbia, for Appellant.
 Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Senior Assistant Attorney General William Edgar Salter III, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for Respondent.
 
 
 

PER CURIAM:  Eric Andrew Rieb appeals a murder conviction, arguing the trial court erred in excluding evidence of his prior psychiatric hospitalizations and refusing to present a jury charge on the law of self-defense.  We affirm.[1] 
FACTS
In March 2000, kitchen manager Joe Award hired Rieb, a college dropout with some professional culinary training and experience, as a line cook at the Outrigger, a local seafood restaurant.  During the initial weeks of his employment, Rieb rode back and forth to work with Award, who lived near him.  Shortly after being hired, Rieb was demoted to fry cook.  In mid-August, Award fired Rieb from the kitchen staff, citing his unreliability and serious drinking problem.  Following his termination, Rieb occasionally mentioned to others his professional dissatisfaction and personal dislike for Award.  Two weeks after being terminated, Rieb approached daytime manager Janice Smith about the possibility of being re-hired at the restaurant and working for her.  With Awards approval, Rieb was re-hired on the restaurants daytime cleaning staff, where he would rarely be in contact with Award.  At the end of October, the Outrigger terminated Award as nighttime manager. 
On Sunday, November 19, Rieb was relaxing at his apartment with co-workers Blake Josephs and Jeremiah Lawson.  Around noon, Rieb began receiving phone calls from Award, who wanted Rieb to come over to his place for some drinks.  It was known to Rieb and other employees of the Outrigger that Award was homosexual.  The phone calls continued all afternoon.  Rieb told Award he might stop by, but communicated to Josephs and Lawson that he did not desire to do so.  After several calls, Rieb refused to speak with Award.  Josephs began answering the calls instead, and repeatedly told Award to stop harassing them; the calls, however, continued.  Finally, around 7:30 p.m., Josephs and Lawson suggested that Rieb go over to Awards home and see what he wanted.  Rieb complied, left the apartment, and walked over a mile in the pouring rain to Awards residence.
Approximately forty-five minutes later, Rieb called his apartment from Awards home to speak to Josephs.  Once Josephs was reached, Rieb told him and Lawson that he had just killed Award and needed help.  They told Rieb that they were on their way over to help him, so he should stay where he was, but then called 9-1-1 to report the crime.  The police drove to a nearby restaurant to meet Josephs, who directed them to Awards home.
Once on the scene, law enforcement officers surrounded the residence and ordered Rieb to exit.  He was soon spotted breaking out a window in the rear of the building in an attempt to escape, but fled back into the home when ordered to halt.  Rieb eventually exited from the front of the house and peacefully surrendered.  After he was handcuffed, officers searched his person incident to the arrest.  Stuffed in his waistline near the small of his back, the police found a household steak knife.  The search also revealed what appeared to be a severed penis in his front-right pocket.  Rieb was promptly arrested.
Upon entering the small home, officers quickly discovered Award, badly beaten about the head and body, but still breathing, with his groin area exposed and severely mangled.  Emergency medical services were called expeditiously, but Award died soon thereafter.  A subsequent autopsy was inconclusive as to which specific injury caused Awards death, but determined either the blunt trauma to his head or the bodily injuries could have alone proved fatal.  
According to Rieb, he and Award began drinking alcohol together soon after his arrival.  In the relatively short time period he spent with Award, Rieb estimates he drank from eight to ten beers, around four shots of Vodka, and about four or five shots of Bourbon.  At some point in the evening, Award played a homosexual pornographic video on his large television.  Rieb testified that sometime thereafter he lost consciousness for what he believes was about forty-five minutes.  He claimed to have awoken to find himself standing in the kitchen.  Award was kneeling on the floor in front of him with his genitals exposed and began pleading with Rieb to perform oral sex on him.  At this point, Rieb admitted he got nauseous and . . . like a big bolt of adrenaline . . . got really psyched and hit Award in the head with a nearby brass chalice.  He also vaguely recalls hitting Award several times and stomping on his ribs while Award was just laying there on the floor.  Rieb, however, claims no recollection of ever wielding a steak knife or cutting the victim.   
Rieb was indicted and convicted of petit larceny,[2] mayhem, and murder.  The trial court sentenced him to concurrent terms totaling forty years of imprisonment.  This appeal followed.
LAW / ANALYSIS
I. Self-defense Charge
Rieb argues the trial court erred in refusing to charge the jury on the law of self-defense.  We disagree.
The law to be charged to the jury is determined by the evidence presented at trial.  State v. Goodson, 312 S.C. 278, 280, 440 S.E.2d 370, 372 (1994).  In determining whether the evidence required a certain jury charge, we view the facts in a light most favorable to the defendant.  State v. Byrd, 323 S.C. 319, 321, 474 S.E.2d 430, 431 (1996).  Accordingly, if there is any evidence in the record to support self-defense, the issue should be submitted to the jury.  State v. Burkhart, 350 S.C. 252, 260-261, 565 S.E.2d 298, 302 (2002).  
 It is well established in South Carolina that in order to establish a valid claim of self-defense, a defendant must prove: (1) he was without fault in bringing on the difficulty; (2) he actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) a reasonably prudent person of ordinary firmness and courage would have entertained the same belief; and (4) he had no other probable means of avoiding the danger.  State v. Long, 325 S.C. 59, 62, 480 S.E.2d 62, 63 (1997).  To warrant a jury instruction on self-defense a defendant must produce evidence (albeit only a minimal amount of evidence, per this courts standard of review) that if determined credible by the jury, would tend to establish each element of self-defense.  Failure to present evidence on any one element precludes a jury charge on the law of self-defense.  See, e.g., State v. Bryant, 336 S.C. 340, 345-46, 520 S.E.2d 319, 322 (1999) (finding that defendants testimony failed to establish he did not bring on the difficulty; thus, a self-defense charge was not warranted); State v. Bruno, 322 S.C. 534, 536, 473 S.E.2d 450, 452 (1996) (finding that appellant was not entitled to a self-defense charge, because he presented no evidence that he believed he was in imminent danger of losing his life or sustaining serious bodily injury); Goodson, 312 S.C. at 280, 440 S.E.2d at 372 (finding defendant was not entitled to self-defense charge when he presented no evidence showing actual or perceived imminent danger).
In order to satisfy the fourth element of self-defense, the defendant must show that he had no other probable means of escape except to take the life of his aggressor or, stated another way, that: 

  . . . he had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily harm than to act as he did in the particular instance; that it is ones duty to avoid taking human life where it is possible to prevent it even to the extent of retreating from his adversary unless by doing so the danger of being killed or suffering serious bodily harm is increased or it is reasonably apparent that such danger would be increased. 

State v. Jackson, 227 S.C. 271, 279, 87 S.E.2d 681, 685 (1955).
In the present case, we have serious doubts as to whether Riebs testimony constituted sufficient evidence as to any element of self-defense to warrant the jury charge, especially when considering that one may only use such force as is reasonably necessary to defend oneself.  See Jackson, 227 S.C. at 279, 87 S.E.2d at 685.  We base our decision, however, on the fact that Riebs own version of the events transpiring at Awards home utterly fails to explain why Rieb did not just decline Awards sexual advances and leave the residence.  Although defense counsel sought at trial to establish Riebs belief that he was locked in the apartment, Rieb acknowledged in no uncertain terms on cross-examination that he did not realize the entrance to the residence was locked until after he had fatally beaten his host.  Rieb was not entitled to a self-defense charge at trial because he presented no evidence that he had no other means of avoiding the perceived danger.        
II. Exclusion of Psychiatric Hospitalization Evidence
Rieb argues the trial court erred in excluding evidence of his prior psychiatric hospitalizations. We disagree.
At trial, Rieb expressly declined to pursue an insanity defense.  Nevertheless, Rieb sought to establish, through his own testimony and that of others, that he has a history of psychiatric problems stemming from past instances of sexual abuse.  Rieb, his mother, and his sister proffered testimony that when he was eight years old, Riebs cousin molested both he and his sister.  This experience resulted in a noticeable change in Riebs personality and, about a year and half later, his parents were finally told about the abuse.  Rieb was then hospitalized for psychiatric treatment, diagnosed with attention deficit disorder, and medicated.  This treatment continued intermittently until his early twenties.   
Rieb also proffered testimony of another incident of sexual abuse.  According to Rieb, when he was twenty-two, he was invited to the home of an older male acquaintance.  After the consumption of several alcoholic beverages, he blacked out at the mans home and awoke to find the man sodomizing him.  Rieb fled the home, and was later treated for psychiatric distress relating to the incident.[3] 
After considering the above testimony and counsels arguments concerning its admissibility, the trial court decided to allow all testimony relating to the two prior instances of abuse, but excluded all evidence of Riebs past psychiatric treatment.  Although the trial court clearly perceived the relevance of the past abuse in establishing Riebs actual belief that he was in imminent danger at the time he struck the victim, it concluded that all evidence of past psychiatric treatment would only be relevant to the affirmative defense of insanity, a defense that Rieb expressly declined to raise at trial.   
On appeal, Rieb argues this exclusion was erroneous because evidence of his medical treatment was critical to corroborating the past sexual abuse.  We are not convinced the exclusion of this evidence was reversible error.
Evidence is relevant if it tends to establish or make more or less probable some matter in issue upon which it directly or indirectly bears. State v. Alexander, 303 S.C. 377, 380, 401 S.E.2d 146, 148 (1991).  Certainly evidence of Riebs past medical treatment is relevant in the sense asserted by Rieb on appeal, namely because it does, to some degree, corroborate the instances of past sexual abuse.  However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Rule 403, SCRE.  A trial judges decision regarding the competency of testimony under Rule 403, SCRE, should be reversed only in exceptional circumstances and this court is obligated to give great deference to the trial courts judgment.  State v. Slocumb, 336 S.C. 619, 633, 521 S.E.2d 507, 514 (Ct. App. 1999).  The decision to exclude evidence under Rule 403 should not be reversed simply because an appellate court believes it would have decided the matter otherwise. Id.  
In excluding the testimony in the present case, the court was simply accepting the States argument that such evidence would likely mislead the jury into thinking an insanity or diminished capacity style defense was at issue in the trial.  Furthermore, as Rieb, his mother, father, and sister were allowed to testify regarding the occurrences, any corroboration of the past instances of abuse would have been cumulative; thus, the trail court acted within its discretion in excluding the evidence.
Moreover, the psychiatric treatment evidence was introduced merely to corroborate the past sexual abuses and the past sexual abuses introduced to establish an element of self-defense.  Because the jury charge on self-defense was properly declined for lack of evidence on other elements, we see no undue prejudice in the testimonys exclusion.   See State v. Mason, 215 S.C. 457, 463, 56 S.E.2d 90, 93 (1949) (affirming the exclusion of evidence that was merely cumulative and of inconsequential probative value for the purpose for which is was offered).
CONCLUSION
Because we find Rieb was not entitled to a jury charge on the law of self-defense and conclude there was no reversible error in the trial courts exclusion of evidence regarding his past psychiatric treatment, Riebs convictions are hereby
AFFIRMED.
HEARN, C.J., KITTREDGE and WILLIAMS, JJ., concur.

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.
[2] At trial, Rieb conceded that following the beating of Award, he took several bottles of beer and liquor from the home and hid them outside with the intention of taking them when his roommate arrived.  {R. 411-412}
[3] This treatment occurred months later, when a court ordered Rieb to obtain alcohol dependency treatment after being arrested for DUI.  The occurrence was brought up and discussed during this court-ordered treatment.